IN THE COURT OF APPEALS OF TENNESSEE
AT NASHVILLE
September 19, 2012 Session

## STATE OF TENNESSEE v. ANTONIO FREEMAN

**Direct Appeal from the Criminal Court for Sumner County**
**No. 2009-CR-126    Dee David Gay, Judge**

**No. M2011-02525-COA-R3-CV - Filed October 16, 2012**

Defendant/Appellant was arrested and charged with driving under the influence and violation of the implied consent law. At trial, Appellant and the arresting officer gave conflicting testimony as to whether Appellant refused to submit to a blood test. The jury acquitted Appellant of the driving under the influence charge, but the trial court, crediting the arresting officer's testimony, found that the Appellant had violated the implied consent law. On appeal, Appellant argues that the trial court erred in crediting the testimony of the arresting officer despite the acquittal by the jury. Discerning no error, we affirm.

**Tenn. R. App. P. 3. Appeal as of Right; Judgment of the Criminal Court Affirmed**

J. STEVEN STAFFORD, J., delivered the opinion of the Court, in which ALAN E. HIGHERS, P.J.,W.S., and DAVID R. FARMER, J., joined.

James B. Hawkins, Gallatin, Tennessee, for the appellant, Antonio Freeman.

Robert E. Cooper, Jr., Attorney General and Reporter and Brent C. Cherry, Senior Counsel, for appellee, State of Tennessee.

**OPINION**

**I. Background**

On September 14, 2008, Defendant/Appellant Antonio Freeman[1] was stopped by an

---

[1] Mr. Freeman is also referred to as Antwan Freeman throughout the proceedings in the trial court.
(continued...)

officer of the Gallatin Police Department on suspicion of DUI. Mr. Freeman was subsequently charged with driving under the influence ("DUI"), Tennessee Code Annotated Section 55-10-401, and a violation of the implied consent law, Tennessee Code Annotated Section 55-10-406. On February 5, 2009, the Sumner County Grand Jury indicted Mr. Freeman for both offenses. Mr. Freeman was appointed counsel[2] and pled not guilty to both charges.

A jury trial was held on September 26 and 27, 2011. Gallatin Police Officer Daniel Steakin first testified. Officer Steakin is a veteran police officer who served as a Marine and worked at the Pentagon prior to moving to Tennessee. Once Officer Steakin became a police officer, he attended various DUI training programs, and has worked on over 200 DUI cases in his career. Officer Steakin testified that he observed a black truck, which was traveling on Highway 31-E toward Gallatin, cross over the center line of traffic. Accordingly, Officer Steakin activated his emergency lights, turned his car around, and began pursuing the truck, which he testified again crossed the center line before pulling over.

The truck pulled over in a nearby parking lot and Officer Steakin approached the vehicle. Officer Steakin testified that, upon approaching the vehicle, he noticed the odor of burnt marijuana emanating from the truck's open window. Officer Steakin testified that he asked the driver, Mr. Freeman, for his driver's license, registration, and insurance information. Officer Steakin also asked Mr. Freeman to step out of the truck and Mr. Freeman cooperated. Officer Steakin further testified that Mr. Freeman was unsteady on his feet in getting out of the car and informed the officer that he had taken muscle relaxers and pain pills because he had recently had a tooth pulled.

Officer Steakin then asked Mr. Freeman to perform several field sobriety tests. The tests included a one-leg stand and a nine-step walk and turn. However, Officer Steakin testified that Mr. Freeman informed him that he would have trouble completing these tasks due to a prior injury to his leg that made it difficult for him to walk. Indeed, Mr. Freeman could not successfully perform either field test. Officer Steakin also testified that he asked Mr. Freeman to perform a finger dexterity test; however, again Mr. Freeman pointed to a hand/wrist injury (as evidenced by a splint on his hand) that would prevent him from satisfactorily completing the task. Officer Steakin further testified that, based on Mr.

---

[1](...continued)
However, in his appellate brief, Mr. Freeman refers to himself as Antonio Freeman; therefore, this Court will refer to Mr. Freeman by the first name he has chosen to use.

[2] According to Mr. Freeman's brief, over the three years between the arrest and the trial, several appointed attorneys either withdrew from the case or were discharged by Mr. Freeman. Mr. Freeman's counsel at trial, however, continues to represent him on appeal.

Freeman's inability to successfully complete any of the field sobriety tests, his observation of the truck moving over the center line on the street, Mr. Freeman's slurred speech, and the smell of burnt marijuana, Officer Steakin believed that Mr. Freeman was not capable of properly operating a motor vehicle. Thus, Officer Steakin placed Mr. Freeman in the back of his patrol car.

Officer Steakin went on to testify that, after two other officers arrived on the scene, they proceeded to search Mr. Freeman's vehicle. According to Officer Steakin, the officers found a small marijuana cigarette in an empty carton of milk in the center console of the truck. Although Officer Steakin noted the marijuana evidence on his report, he admitted that the marijuana was not recovered from the scene. Instead, the marijuana cigarette was left in the truck, which was later driven home by Mr. Freeman's girlfriend. Officer Steakin explained the officers' failure to recover the marijuana by stating that it was not their usual procedure to recover such a small amount of marijuana, which he described as a "trace amount" and "very small, very minute, very, very small." Officer Chris Ford, one of the officers who arrived on the scene and performed the inventory search of the car, later testified that the marijuana cigarette was approximately two inches long, and weighed between two to two-and-a-half grams. Officer Steakin also testified that a field test had been done to confirm that the substance recovered from the truck was, in fact, marijuana; however, again the test was not preserved for trial and was not presented as evidence.

On cross-examination, counsel for Mr. Freeman questioned Officer Steakin about the video equipment installed in his patrol car. Officer Steakin testified that the video equipment activates once he turns on his emergency lights and that it automatically records the traffic stop. However, Officer Steakin testified that the digital data card on his equipment was full on the night in question and that, as a result, the incident was not recorded. Officer Steakin further admitted that, in previous sworn testimony, he had stated that he was heading back toward the police station to download the data from his card. However, at trial, he admitted that he was not heading toward the police station at the time he observed Mr. Freeman's vehicle, but was heading in the opposite direction. Officer Steakin further admitted that he never informed dispatch that he was en route to the police station due to a full data card; however Officer Steakin testified that it was not his usual procedure to do so. Officer Steakin also admitted on cross examination that, on the section of Highway 31-E where Mr. Freeman was alleged to have crossed over the center line into oncoming traffic, a concrete barrier existed in the middle of the road that would have prevented Mr. Freeman from entering oncoming traffic; Officer Steakin explained, however, that he observed Mr. Freeman cross the center line on portions of the road that were located before the concrete barrier began.

For the first time on cross-examination, Officer Steakin also testified to Mr.

Freeman's alleged refusal to consent to a blood test to determine his blood alcohol level. Officer Steakin testified that, after he placed Mr. Freeman under arrest, he asked Mr. Freeman to submit to a blood test. Officer Steakin testified that he could not recall if Mr. Freeman offered to perform a Breathalyzer test, but stated that Mr. Freeman refused to submit to a blood test. According to Officer Steakin, a blood test, rather than a Breathalyzer, is the usual procedure of the Gallatin Police Department. Officer Steakin further testified on redirect that he read Mr. Freeman the implied consent form, which states that an individual may refuse to submit to the blood test but may be subject to consequences for that refusal, including being charged with a violation of the implied consent law. According to Officer Steakin, even after being informed of the consequences of his refusal, Mr. Freeman refused to submit to the blood test and also refused to sign the form indicating his refusal. A copy of the form, noting that Mr. Freeman refused to sign, was entered into evidence. Officer Steakin then transported Mr. Freeman to jail. After arriving at the jail, Office Steakin testified that he again read the implied consent form to Mr. Freeman; however, Mr. Freeman again refused to submit to the test.

Mr. Freeman next testified in his own defense. Specifically, he testified that he was not under the influence of any drugs or alcohol on the night in question. Instead, Mr. Freeman testified that he had picked up his passenger in Murfreesboro, dropped his son off with his mother, and stopped at Krispy Creme and Blockbuster on his way back to his girlfriend's house. He further testified that he never stated that he had taken muscle relaxers or pain killers due to a pulled tooth. Mr. Freeman also denied that he or his passenger smoked any marijuana on the night in question. Mr. Freeman further explained that he did not veer into oncoming traffic, but merely moved his truck slightly over the line of traffic in order to avoid a large SUV. Mr. Freeman also testified that Officer Steakin asked him step out of his vehicle before asking for any identification. According to Mr. Freeman, when Officer Steakin asked Mr. Freeman to perform the field sobriety tests, Mr. Freeman explained his injuries and inquired as to whether he could simply perform a Breathalyzer test. Mr. Freeman further testified that Officer Steakin asked Mr. Freeman to sit in the back of the patrol car and began searching his truck before placing him under arrest. Mr. Freeman also testified that, while sitting in the patrol car, he could clearly see an activated green light, rather than a red light, on the video recording equipment, which Mr. Freeman testified, without dispute, indicated that the video equipment was working. In addition, Mr. Freeman could see the scene from a monitor inside the patrol car. Therefore, Mr. Freeman believed that the video recording equipment was in fact recording the incident. Mr. Freeman further testified that he never actually refused to submit to a blood test, but that he merely requested (more than once) that a Breathalyzer test be used instead. Mr. Freeman finally testified that en route to the jail, he requested that Officer Steakin transport him to the hospital to perform the blood test, but that Officer Steakin refused.

Mr. Freeman did admit, however, that he had previously pleaded guilty to Theft Over $10,000 in connection with a stolen vehicle, Possession of a Schedule IV Controlled Substance, for marijuana possession, and Sale of a Schedule II Controlled Substance, for sale of cocaine. Mr. Freeman denied having committed the crimes, but admitted to pleading guilty and stated that he had been released from prison in 2008.

Mr. Freeman's passenger, Gary Pitts, also testified. Mr. Pitts testified that he was not present when Officer Streakin allegedly read the implied consent form to Mr. Freeman. However, Mr. Pitts testified that Mr. Freeman was not under the influence of drugs or alcohol on the night in question. As to the alleged marijuana cigarette, Mr. Pitts testified that he had been smoking a Black and Mild cigar and that no one in the car had smoked marijuana. Mr. Pitts admitted, however, that he had previously been convicted of felony assault and Attempted Aggravated Robbery. Indeed, at the time of the testimony, Mr. Pitts was in police custody on another charge.

At the conclusion of the testimony, the jury returned a verdict of Not Guilty as to the charge of DUI. After the jury was polled and excused, however, the trial court found that Mr. Freeman had violated the implied consent law and ordered that his licence be revoked for a period of one (1) year. A judgment was filed reflecting the trial court's finding on October 5, 2011.

On November 4, 2011, Mr. Freeman, *pro se*, filed a motion to reverse the judgment finding him in violation of the implied consent law. On the same day, Mr. Freeman's counsel filed a notice of appeal of the trial court's judgment. The Court held a hearing on Mr. Freemans *pro se* motion on November 15, 2011. At the hearing, Mr. Freeman's counsel questioned whether the appeal of Mr. Freeman's implied consent violation was criminal or civil in nature, whether it should be appealed to the Court of Appeals or Court of Criminal Appeals and whether Mr. Freeman was entitled to appointed counsel on appeal. The trial court orally ruled that the matter was civil and that Mr. Freeman was not entitled to appointed counsel.[3] On November 16, 2011,[4] the trial court signed an order denying Mr. Freeman's motion to reverse the judgment.[5]

---

[3] Despite the trial court's ruling, Mr. Freeman's counsel continued to represent him on appeal.

[4] Although the order was signed on November 15, 2011, the order was not entered until December 15, 2011. However, the record reflects that Mr. Freeman's counsel approved the order for entry and sent a copy to the State on November 23, 2011.

[5] The order also noted that Mr. Freeman was under a previous order of the court not to make *pro se* filings in the trial court. Thus, the court scheduled a hearing for criminal contempt to be held on December
(continued...)

## II. Analysis

Mr. Freeman raises a single issue on appeal, taken from Mr. Freeman's brief: Whether the trial court erred in failing to find that the preponderance of the evidence establishes and supports the credibility of Mr. Freeman , who was found not guilty of DUI by a unanimous jury.

The implied consent law provides, in relevant part:

> (a)(1) Any person who drives a motor vehicle in this state is deemed to have given consent to a test or tests for the purpose of determining the alcoholic content of that person's blood, a test or tests for the purpose of determining the drug content of the person's blood, or both tests. However, no such test or tests may be administered pursuant to this section, unless conducted at the direction of a law enforcement officer having reasonable grounds to believe the person was driving while under the influence of alcohol, a drug, any other intoxicant or any combination of alcohol, drugs, or other intoxicants as prohibited by § 55-10-401, . . .

> \* \* \*

> (3) Any law enforcement officer who requests that the driver of a motor vehicle submit to either or both tests authorized pursuant to this section, for the purpose of determining the alcohol or drug content, or both, of the driver's blood, shall, prior to conducting either test or tests, advise the driver that refusal to submit to the test or tests will result in the suspension by the court of the driver's operator's license . . . ,

---

[5](...continued)
5, 2011. No adjudication of this contempt proceeding is contained in the record. The failure to adjudicate a contempt petition arising after the entry of judgment does not affect the finality of a judgment entered by the trial court. *See Poff v. Poff*, No. 01-A-01-9301-CV00024, 1993 WL 73897 at \*2 (Tenn. Ct. App. March 17, 1993) ("Contempt proceedings are collateral to and independent of the cases or proceedings from which they arise. . . . . [C]ontempt proceedings that arise after judgment has been entered . . . do not affect the finality of the judgment."). Thus, despite the failure to include any record of the resolution to the contempt proceeding in the appellate record, this Court has jurisdiction to consider this appeal. *See* Tenn. R. App. P. 3(a).

(4)(A) If such person, having been placed under arrest and then having been requested by a law enforcement officer to submit to either or both tests, and having been advised of the consequences for refusing to do so, refuses to submit, the test or tests to which the person refused shall not be given, and the person shall be charged with violating this subsection (a).

Tenn. Code Ann. § 55-10-406. Violation of the implied consent law is not a criminal offense unless the individual was driving while under a revoked or suspended license due to a prior DUI conviction or other enumerated offense. *See* Tenn. Code Ann. § 55-10-406(a)(4)–(5). A conviction under the implied consent law results in a license revocation for a period of one year. Tenn. Code Ann. § 55-10-406(a)(4)(A)(i). The determination of whether a driver violated the implied consent law "shall be made at the same time and by the same court as the one disposing of the offense for which such driver was placed under arrest." Tenn. Code Ann. § 55-10-406(a)(3); *see also* **State v. MacKinnon**, No. E2009–00093–CCA–R3-CD, 2011 WL 1460167, at *2 (Tenn. Crim. App. March 30, 2011) (no perm. app. filed) (holding that the trial judge, rather than the jury, makes the determination of whether the defendant violated the implied consent law). In this case, the trial court found that Mr. Freeman violated the implied consent law after the jury had returned a verdict of not guilty on the DUI charge. Thus, the trial court's ruling was in the nature of a bench trial. In addition, because Mr. Freeman was not driving on a revoked or suspended license at the time, the penalty for violation of the implied consent law was civil in nature, i.e. an administrative penalty, rather than a criminal sanction. *See* **State v. Pinchak**, 277 S.W.3d 912 (Tenn. Crim. App. 2005) (noting that "the defendant's violation of the implied consent law . . . is not a criminal offense; it is a civil offense imposing an 'administrative penalty.'"). Because this case is in the nature of a civil action, this appeal is properly before this Court. *See* **State v. Hembrook**, No. M2011-01358-COA-R3-CV, 2012 WL 3115208, at *1 n.4 (Tenn. Ct. App. July 31, 2012).

Usually bench trials in civil cases are subject to the requirements of Rule 52.01 of the Tennessee Rules of Civil Procedure. Rule 52.01 states that: "In all actions tried upon the facts without a jury, the court shall find the facts specially and shall state separately its conclusions of law and direct the entry of the appropriate judgment." The Tennessee Rules of Civil Procedure further provide that the Rules shall apply "in the circuit or chancery courts in all civil actions, whether at law or in equity, and in all other courts while exercising the civil jurisdiction of the circuit or chancery courts." Tenn. R. Civ. P. 1. The Court in this case is exercising civil jurisdiction by adjudicating the violation of an administrative rule. Thus, we are of the opinion that the Rules of Civil Procedure should apply in this case. Indeed, the Court of Criminal Appeals has previously held that violation of the implied consent law, being a civil matter, is governed by the Tennessee Rules of Civil Procedure.

*See State v. Travis*, No. W2004-00476-CCA-R3-CD, 2005 WL 711947, at *3 (Tenn. Crim. App. March 28, 2005) (citing Tenn. Op. Atty. Gen. No. 95-077 (1995)). Accordingly, the trial court, in finding Mr. Freeman in violation of the implied consent law, was required to set forth specific findings of fact and conclusions of law with regard to its ruling.

The order in this case finding Mr. Freeman in violation of the implied consent law is contained in a form fashioned for criminal actions. Thus, it includes no findings of fact or conclusions of law sufficient to satisfy Rule 52.01. In addition, the trial court's oral statements at the conclusion of the trial are likewise insufficient to afford meaningful appellate review of the ruling. This Court has previously held that the General Assembly's decision to require findings of fact and conclusions of law is "not a mere technicality." *In re K.H.*, No. W2008-01144-COA-R3-PT, 2009 WL 1362314, at *8 (Tenn. Ct. App. May 15, 2009). Instead, the requirement serves the important purpose of "facilitat[ing] appellate review and promot[ing] the just and speedy resolution of appeals." *Id.*; *White v. Moody*, 171 S.W.3d 187, 191 (Tenn. Ct. App. 2004); *Bruce v. Bruce*, 801 S.W.2d 102, 104 (Tenn. Ct. App. 1990). Without findings of fact and conclusions of law "this court is left to wonder on what basis the court reached its ultimate decision." *In re K.H.*, 2009 WL 1362314, at *8 (quoting *In re M.E.W.*, No. M2003-01739-COA-R3-PT, 2004 WL 865840, at *19 (Tenn. Ct. App. April 21, 2004)). However, at a later hearing in which the trial court ruled that the implied consent violation was civil in nature rather than criminal, the trial court, apparently aware of the civil rules requiring findings of fact and conclusions of law in bench trials, endeavored to place his reasoning on the record. The trial court stated:

> I find that this is not a criminal matter. If [Mr. Freeman] wants to pursue [an appeal] on his own he may, but I don't think it's appropriate for you to spend time as his appointed attorney in a criminal case on a civil appeal. That is the ruling.
> Let me state this, if there is an appeal that's going to be made here, the Court made this finding after the jury trial. I'm not going to go over all the proof, but I want the record to preserve this aspect of my ruling today, . . . I want this set apart for any purposes of appeal so any reviewing court that's reviewing . . . my finding that [Mr. Freeman] refused consent to take a blood test here. I want this to go up with any of these documents from this Court.
> Now, while I'm on the subject, let me elaborate on that. There were two witnesses that were called at trial that put this issue in a perspective. It [sic] was Officer Daniel Steakin. The record reflects that he was a Gallatin Police Officer. He was a marine from 1997 to 2001. At 9/11/2001, he was in the

Pentagon building. He was an officer with Mt. Juliet Police Department. He was hired by the Gallatin Police Department. He's had training, DUI, and he's been to the DUI Instruction School. His testimony was after the arrest, [Mr. Freeman] was read the Implied Consent Law, and he refused a blood test. [Mr. Freeman] stated he didn't want to take a blood test, I have [the unsigned Implied Consent form] here to make an exhibit to this particular ruling where [Mr. Freeman] refused to sign.

I also considered the contrary testimony of [Mr. Freeman]. But I go further to state that Officer Steakin was further asked about the Implied Consent Form, and he stated he read the Implied Consent Form to [Mr. Freeman] two times, and he refused to sign.

I considered the credibility of [Mr. Freeman]. I have to weigh that credibility in making a ruling of this type. I don't find [Mr. Freeman] to be credible on this particular point, and the record should reflect that. [Mr. Freeman] is a convicted felon, and he was convicted of Theft over $10,000, Possession of Marijuana for Res[ale], and S[ale] of [a] Schedule II [Controlled Substance]. He testified that at no time did the officer ask him to take a blood test, that the officer was asked by [Mr. Freeman] . . . to take the test, the officer would not give him a blood test.

I find that Officer's Steakin's testimony is credible testimony. I find that [Mr. Freeman]'s testimony is not believable on that issue.

Now, since this is a civil matter we're not talking about beyond a reasonable doubt. I find the proof is clear and convincing that [Mr. Freeman] refused the consent and refused to take a blood test, and he refused to sign the Implied Consent Form. That will be the order of the Court. . . . [A]ttach that as a part of my ruling on this particular issue.

While we note that the better practice is to set forth findings of fact and conclusions of law in a written order, the question of whether Rule 52.01 of the Tennessee Rules of Civil Procedure applies in implied consent cases has not been presented before. Here, the trial court directed its oral ruling be included in the appellate record in an effort to explain its reasoning in finding that Mr. Freeman violated the implied consent law. This Court has previously held that we may "soldier on" to consider the issues raised on appeal when the court's decision is "readily ascertain[able]." ***Burgess v. Kone, Inc.***, No.

M2007–0259–COA–R3–CV, 2008 WL 2796409, at *2 (Tenn. Ct. App. July 18, 2008). The oral ruling sets forth appropriate findings of fact and conclusions of law that detail the trial court's reasoning. Therefore, we conclude that the oral ruling is sufficient to afford meaningful appellate review in this case. *See In re K.H.*, 2009 WL 1362314, at *8.

We next consider the substantive argument raised by Mr. Freeman. Essentially, Mr. Freeman argues that the trial court erred in crediting the testimony of Officer Steakin over Mr. Freeman's testimony when the jury acquitted Mr. Freeman of the DUI charge. Mr. Freeman argues that the acquittal "may properly [be] said to discredit the testimony of the witnesses for the State, and may properly be said to resolve all conflicts in favor of the theory of the defense." Mr. Freeman also argues that "[w]hen an accused challenges the sufficiency of the evidence, this Court's standard of review is whether, after considering the evidence in the light most favorable to the State, 'any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt.'" Respectfully, we disagree.

As discussed above, this is a civil action reviewing the trial court's decision to impose an administrative penalty. Therefore, the State's burden of proof in the trial court was to show that Mr. Freeman violated the implied consent law by a preponderance of the evidence, rather than beyond a reasonable doubt. *See State v. Albright*, No. E2007-02671-CCA-R3-CD, 2008 WL 5130691, at *6 & n.2 (Tenn. Crim. App. Dec. 8, 2008) (noting that the proper standard of proof is a preponderance of the evidence).

In addition, the determination of whether Mr. Freeman violated the implied consent law was properly made by the trial court rather than the jury. *See State v. MacKinnon*, No. E2009–00093–CCA–R3-CD, 2011 WL 1460167, at *2 (Tenn. Crim. App. March 30, 2011) (no perm. app. filed) ("The Code gives to the trial court, not a jury, the authority for determining whether the noncriminal implied consent law was violated."). Because this issue was tried by the court, sitting without a jury, this Court conducts a *de novo* review of the trial court's decision with a presumption of correctness as to the trial court's findings of fact, unless the evidence preponderates against those findings. *Wood v. Starko*, 197 S.W.3d 255, 257 (Tenn. Ct. App. 2006). For the evidence to preponderate against a trial court's finding of fact, it must support another finding of fact with greater convincing effect. *Walker v. Sidney Gilreath & Assocs.,* 40 S.W.3d 66, 71 (Tenn. Ct. App. 2000); *The Realty Shop, Inc. v. R.R. Westminster Holding, Inc.*, 7 S.W.3d 581, 596 (Tenn. Ct. App. 1999). This Court reviews the trial court's resolution of legal issues without a presumption of correctness. *Johnson v. Johnson*, 37 S.W.3d 892, 894 (Tenn. 2001).

In this case, the trial court's ruling primarily rested on the credibility of Officer Steakin and Mr. Freeman's lack of credibility.  Mr. Freeman argues that this was in error because the jury's verdict of not guilty impliedly credited the testimony of the defense

witnesses, including Mr. Freeman. We again respectfully disagree. The fact that the jury failed to find that the State had proven that Mr. Freeman committed the offense of DUI beyond a reasonable doubt is a determination separate and distinct from whether the State proved that Mr. Freeman violated the implied consent law by a preponderance of the evidence.

In our view, this case rests on the relative credibility of Officer Steakin and Mr. Freeman. Indeed, the only evidence regarding whether Mr. Freeman was asked and refused to submit to a blood test is the conflicting testimony of Mr. Freeman and Officer Steakin. Simply put, Officer Steakin testified that he asked Mr. Freeman to submit to a blood test and, despite telling him the consequences of refusing, Mr. Freeman refused to consent. In contrast, Mr. Freeman testified that he was never asked to submit to a blood test, and that he even unsuccessfully requested that Officer Steakin take him to the hospital so that a blood test could be performed. The trial court expressly stated that Officer's Steakin's testimony on this issue is "credible testimony," in contrast to Mr. Freeman's testimony, which the trial court viewed as "not believable." When the resolution of the issues in a case depends upon the truthfulness of witnesses, the trial judge who has the opportunity to observe the manner and demeanor of the witnesses while testifying is in a far better position than this Court to decide those issues. *In re Arteria H.*, 326 S.W.3d 167, 176 (Tenn. Ct. App. 2010) (citing *McCaleb v. Saturn Corp.*, 910 S.W.2d 412, 415 (Tenn. 1995)). If the trial court's factual determinations are based on its assessment of witness credibility, this Court will not reevaluate that assessment absent clear and convincing evidence to the contrary." *Franklin County Bd. Of Educ. v. Crabtree*, 337 S.W.3d 808, 811 (Tenn. Ct. App. 2010) (citing *Jones v. Garrett*, 92 S.W.3d 835, 838 (Tenn. 2002)).

Mr. Freeman's brief points to several facts, which he argues undermine Officer Steakin's credibility. These include: (1) Officer Steakin's prior statement that he was returning to the police station to empty his video data card, when he was in fact heading in the opposite direction; (2) Officer Steakin's failure to preserve any evidence of the marijuana allegedly found in the truck; (3) Officer Steakin's statement that the marijuana found was "very very little," while another officer described it as two to two-and-a-half grams; (4) Officer Steakin's failure to preserve the field test proving the substance found in the truck was marijuana; (5) Officer Steakin's statement that he observed Mr. Freeman's truck cross the center line more than once, when at least part of the road was divided by a cement barrier; and (6) Officer Steakin's statement that the video device did not record the incident due to a full data card even though Mr. Freeman testified that he saw a green light indicating that the equipment was working properly. While we agree that some of these facts call into question Officer Steakin's credibility, other facts in the record give weight to his testimony, including his long police and military service and DUI training. In addition, other facts in the record weigh against Mr. Freeman's credibility, including his felony convictions

for theft and possession and sale of drugs. Thus, there is evidence in the record that both supports and undermines the trial court's credibility findings. This Court, however, is not permitted to re-weigh the credibility of the witnesses and come to our own conclusion. *See Crabtree*, 337 S.W.3d at 811. Mr. Freeman points to no facts in the record from which we can conclude that the trial should have given greater weight to Mr. Freeman's testimony. From our review of the evidence, Mr. Freeman has failed to submit clear and convincing evidence that the trial court's credibility determinations are erroneous.

In the argument section of his brief, Mr. Freeman further argues that the State failed to show that Officer Steakin had "reasonable grounds" to believe that Mr. Freeman was intoxicated in order to justify the requested blood test. As the State points out, however, the Court of Criminals Appeals has stated that "reasonable grounds" is "not an element of the offense" of violation of the implied consent law. *State v. Prater*, No. M2009-00527-CCA-R3-CD, 2010 WL 4674288, at *4 (Tenn. Crim. App. Nov. 16, 2010). Instead, the Court of Criminal Appeals has stated that:

> In this case, to support a conviction for violation of the implied consent law, the State must have proven the existence of the following essential elements: (1) that the defendant had been driving a motor vehicle in this state; (2) that the defendant had been placed under arrest and had been requested by a law enforcement officer to submit to a test for the purpose of determining the alcohol and/or drug content of his blood; (3) that the defendant had been advised that refusal to submit to the test or tests will result in the suspension by the court of the driver's operator's license; and (4) that the defendant refused to submit to such test or tests.

*Prater*, 2010 WL 4674288, at *4 (citing Tennessee Pattern Jury Instructions-Criminal § 38.17 (defining the offense of refusal to submit to a test while driving on cancelled, suspended, or revoked license)). Regardless, Mr. Freeman did not raise the State's failure to prove "reasonable grounds" as an issue in the statement of the issues section of his brief. Therefore the issue is waived. *See Childress v. Union Realty Co.*, 97 S.W.3d 573, 578 (Tenn. Ct. App. 2002) ("Generally, an issue argued in the body of the brief, but not designated as an issue will be considered waived").

Finally, we consider whether the State has shown, by a preponderance of the evidence, that Mr. Freeman violated the implied consent law. As discussed above, because Mr. Freeman failed to show clear and convincing evidence to the contrary, we are constrained by the trial court's credibility findings. Consequently, we must credit the

testimony of Officer Steakin over the contrary testimony of Mr. Freeman. It is undisputed that Mr. Freeman was driving the truck on Highway 31-E in Gallatin, Tennessee when he was stopped by Officer Steakin. According to Officer Steakin's testimony, he twice read the implied consent form to Mr. Freeman after he was placed under arrest and twice asked Mr. Freeman to submit to a blood test. The implied consent form states:

> If you refuse to submit to either o[r] both of these tests, they will not be given. As required by State law I must advise you that if you refuse to submit to either or both tests, you will also be charge[d] with the offense of violation of the implied consent law. If the judge finds you guilty of this separate offense your driver's license will be suspended for a period of at least one year.

According to Officer Steakin, Mr. Freeman twice refused to submit to a blood test despite this warning. Thus the evidence shows that: (1) Mr. Freeman had been driving a motor vehicle in this state; (2) Mr. Freeman had been placed under arrest by Officer Steakin, who requested that Mr. Freeman submit to a test for the purpose of determining the alcohol and/or drug content of his blood; (3) Mr. Freeman was read the implied consent form, which advised that refusal to submit to the test or tests could result in suspension of Mr. Freeman's driver's license; and (4) Mr. Freeman refused to submit to such test. *See **Prater***, 2010 WL 4674288, at *4 (citing Tennessee Pattern Jury Instructions-Criminal § 38.17). Accordingly, we must agree with the trial court that the State has shown, by a preponderance of evidence, that Mr. Freeman violated the implied consent law.

For the foregoing reasons, we affirm the decision of the Criminal Court of Sumner County, Tennessee. The costs of this appeal are assessed to Appellant Antonio Freeman, who is proceeding as a pauper in this appeal.

_____
J. STEVEN STAFFORD, JUDGE