FILED

12/05/2025

Clerk of the
Appellate Courts

# IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
## AT NASHVILLE
### Assigned on Briefs October 21, 2025

## STATE OF TENNESSEE v. CRISTOBAL J. QUINTANA II

**Appeal from the Criminal Court for Davidson County**
**No. 2024-A-623    Cynthia Chappell, Judge**

_____

### No. M2024-01843-CCA-R3-CD

_____

The Defendant, Cristobal J. Quintana II, was convicted by a Davidson County Criminal Court jury of second offense driving under the influence (DUI), a Class A misdemeanor; possessing an open container of alcohol while operating a motor vehicle, a Class C misdemeanor; and violation of the financial responsibility law, a Class C misdemeanor. *See* T.C.A. §§ 55-10-401(1) (2020) (DUI), 55-10-402(a)(2) (Supp. 2022) (subsequently amended) (sentencing for second-offense DUI), 55-10-416 (open container law), 55-12-139 (2020) (financial responsibility).  He was also found civilly liable by the trial court for violation of the implied consent law. *See id.* § 55-10-406 (2020) (subsequently amended) (implied consent).  The trial court imposed an effective eleven-month, twenty-nine-day sentence, forty-five days of which was to be served in jail, and the balance on probation. On appeal, the Defendant contends that the trial court erred in denying his motion to dismiss the superseding indictment for second offense DUI and that the evidence is insufficient to support his convictions and the finding on the implied consent violation.  We affirm the judgments of the trial court and remand for correction of clerical errors on the judgment forms for Counts 1, 2, and 3.

**Tenn. R. App. P. 3 Appeal as of Right; Judgments of the Criminal Court Affirmed; Case Remanded**

ROBERT H. MONTGOMERY, JR., J., delivered the opinion of the court, in which CAMILLE R. MCMULLEN and STEVEN W. SWORD, JJ., joined.

David Paul von Wiegandt, Nashville, Tennessee, for the appellant, Cristobal J. Quintana II.

Jonathan Skrmetti, Attorney General and Reporter; Katherine C. Redding, Senior Assistant Attorney General; Glenn R. Funk, District Attorney General; Luis Casas and Matthew Gilbert, Assistant District Attorneys General, for the appellee, State of Tennessee.

## OPINION

The Defendant's convictions arose from an incident on January 28, 2023, in which he was driving and hit a parked car. The defense claimed that the Defendant had been a passenger in the car and that the driver fled the scene.

Nicole Wines, the parked car's owner, testified that, on the night of January 28, 2023, she heard the collision from inside her fiancé's nearby apartment and that she went outside to investigate. She said she went outside within one minute of hearing the collision, where she saw the Defendant "climbing out" of his car from the passenger side. She said, "[H]e couldn't get out. [The driver's side] was smashed to death." She said the Defendant apologized and claimed that his family had money and that his father would pay her $10,000 for the damages to her car. She said the Defendant referred to "what was going to happen to him" because he had been driving. She said that his speech was slurred and that he had difficulty standing. She said he pleaded with her not to call the police. Ms. Wines called 9-1-1, and the police responded. She said the Defendant tried to walk away from the scene when she called 9-1-1.

Metropolitan Nashville Police Department (MNPD) Officer Ronald Conner testified that he responded to the scene, where he saw the Defendant getting out of the passenger seat of a car. The Defendant held a backpack, which contained five to ten bottles of prescription medication. Officer Conner said he had trouble understanding the Defendant's slurred speech. Officer Conner described the Defendant as "very intoxicated," "very unsteady on his feet," appearing to be confused, and having an odor of alcohol.

Officer Conner testified that the Defendant admitted that he had no insurance and no driver's license. Officer Conner thought the Defendant stated that he owned the car. Officer Conner said the Defendant stated that the driver fled after the collision and that the Defendant never stated that he had been the driver. Officer Conner said that he began administering field sobriety tests and that the Defendant appeared not to comprehend the instructions because he did not comply with them. After the Defendant performed poorly on field sobriety tests, the tests were discontinued before completion for the Defendant's safety. Officer Conner said he arrested the Defendant and attempted to advise the Defendant of his *Miranda* rights but that the Defendant "screamed and yelled to the point to where . . . I don't know if he heard all the words that I said." Officer Conner said the Defendant declined to give a blood or breath sample for blood alcohol content testing. Officer Conner said an empty beer can and "some other type of liquor" were found during the inventory search of the Defendant's car. Officer Conner said that he learned from a records check that the Defendant's license to drive was revoked.

A video recording from Officer Conner's body camera was received as an exhibit and excerpts were played for the jury. The recording was consistent with Officer Conner's testimony and showed that the Defendant was advised of the consequences of noncompliance with the implied consent law and that he declined to participate in blood alcohol content testing. The video evidence also showed the Defendant's wrecked car parked on the side of a road. A recording of the Defendant seated in the backseat of Officer Conner's police cruiser was received as an exhibit, and a portion of it was played for the jury. In it, the Defendant's speech was slurred and difficult to understand.

MNPD Officer Lana Herod testified that she responded to the scene and investigated the collision. She determined that the Defendant was the registered owner of "a white car." She said the Defendant slurred and spoke "a little groggily." She searched the Defendant's car and found an empty beer can on the driver's floorboard and an empty brandy bottle under the driver's seat. She said that the driver's door was inoperable due to damage from the collision, that the car was not drivable, and that it was towed from the scene. Body camera footage which showed her trying to open the driver's door and depicting the damage to the car was played for the jury and received as an exhibit.[1] She said the car key was found on the passenger's seat, and a video recording which depicted the key on the passenger seat was played for the jury and received as an exhibit.

Officer Herod testified that she spoke with the Defendant, who told her, "[T]hey went that way," when she inquired about the car's driver. She said that the Defendant's speech was delayed and that he "seemed groggy."

The defense elected not to present proof. Before the jury charge and outside the presence of the jury, the trial court inquired of defense counsel regarding a stipulation "to multiple or a previous conviction for driving under the influence" and to "driving on a revoked license." Counsel affirmed that the defense agreed to these stipulations, and the Defendant was not questioned about them on the record.[2]

---

[1] The Defendant argues on appeal that this video shows an open driver's window. No witness testified that the driver's window was open, and the defense argued at the trial that an unidentified driver had fled through the passenger door. We have reviewed the video exhibits, and they do not resolve whether the window was open.

[2] This court ordered supplemental briefing regarding the apparent lack of a waiver by the Defendant of his right to a jury determination of the existence of the prior offense. We have conducted a thorough review of the record and the parties' supplemental briefs. We note defense counsel's stipulation regarding the prior DUI offense, and we conclude that further review of the stipulation procedure employed in this case is not warranted. The stipulation was made on the record in the Defendant's presence, and no issue as to the procedure was raised in the motion for a new trial and in the Defendant's initial appellate brief. *See* T.R.A.P. 36(b).

Thereafter, the jury was given its final instructions, and it found the Defendant guilty of DUI, possessing an open container of alcohol while operating a motor vehicle, and violating the financial responsibility law. The jury acquitted the Defendant of driving while his license to drive a motor vehicle was revoked. The trial court determined that a law enforcement officer had sufficient cause to request a blood or breath test, which the Defendant refused. The court made a civil finding that the Defendant violated the implied consent law and revoked the Defendant's driving privileges for two years. The court imposed an effective sentence of eleven months, twenty-nine days, with forty-five days to be served in confinement. This appeal followed.

# I

## Denial of Motion to Dismiss

The Defendant contends that the trial court erred in denying his motion to dismiss the superseding indictment charging him with second-offense DUI because the previous conviction which formed the basis for the second-offense classification occurred after the DUI charged in this case. *See* T.C.A. §§ 55-10-401 (2020) (DUI), 55-10-402(a)(2) (Supp. 2022) (subsequently amended) (sentencing for second-offense DUI). He argues that the violation date, not the conviction date, controls, and therefore, the appropriate charge was first-offense DUI. *See* T.C.A. §§ 55-10-402 (a)(1), 55-10-405. The State responds that the court did not err. We agree with the State.

The present DUI offense occurred on January 28, 2023. The grand jury returned an indictment charging DUI. The Defendant was later arrested and charged with a DUI offense occurring on June 1, 2023, and he pleaded guilty to this offense on December 5, 2023. The State then, on March 20, 2024, obtained a superseding indictment for the January 28, 2023 DUI offense, charging the Defendant with second-offense DUI, based upon his December 5, 2023 conviction of the June 1, 2023 DUI. The Defendant moved to dismiss the superseding indictment on the basis that the June 1, 2023 offense occurred after the offense alleged to have been committed on January 28, 2023. He argued that the date of the offense, rather than the date of the conviction, should be determinative of whether an offense was eligible for a multiple offense sentencing enhancement.

Tennessee Code Annotated section 55-10-402 authorizes increased punishment, on a graduated scale, for conviction of a second or greater DUI offense. As relevant here, the statute provides, "Any person violating § 55-10-401, shall, upon conviction for second offense, be sentenced to serve in the county jail or workhouse not less than forty-five (45) consecutive days nor more than eleven (11) months and twenty-nine (29) days." *Id.* § 55-10-402(a)(2)(A). Code section 55-10-405(a) further provides,

-4-

Except as provided in subdivision (c)(1), for the sole purpose of enhancing the punishment for a violation a person who is convicted of a violation of § 55-10-401 shall not be considered a repeat or multiple offender and subject to the penalties prescribed in this part if ten (10) or more years have elapsed between the date of the present violation and the date of any immediately preceding violation of § 55-10-401 that resulted in a conviction for such offense. If, however, the date of a person's violation of § 55-10-401 is within ten (10) years of the date of the present violation, then the person shall be considered a multiple offender and is subject to the penalties imposed upon multiple offenders by this part. If a person is considered a multiple offender under this part, then every violation of § 55-10-401 that resulted in a conviction for such offense occurring within ten (10) years of the date of the immediately preceding violation shall be considered in determining the number of prior offenses. However, a violation occurring more than twenty (20) years from the date of the instant violation shall never be considered a prior offense for that purpose.

Finally, Code section 55-10-411(B)(2) (Supp. 2022) (subsequently amended), provides, "In the prosecution of second or subsequent offenders, the indictment or charging instrument must allege the prior conviction or convictions for a violation of driving under the influence of an intoxicant under § 55-10-401[.]"

The Defendant argues that the use of the word "violation" in Code section 55-10-405 means that the dates of the respective offenses are determinative of whether a violation resulting in a conviction may be relied upon for sentence enhancement purposes under section 55-10-402. The State counters that section 55-10-411 refers to the existence of a "prior conviction or convictions," thereby signifying that the date that another conviction was received by a defendant, rather than the date that another offense occurred, and is determinative of whether this other conviction may be relied upon to enhance the sentence for a separate DUI conviction.

The interpretation of the statute, which is currently codified in section 55-10-405(a), was considered in *State v. Bowen*, 67 S.W.3d 826 (Tenn. Crim. App. 2001). The statute analyzed in *Bowen* was codified at that time in section 55-10-403(a)(3) but was later recodified in section 55-10-405(a), and the latter is the section upon which the Defendant relies in this case. In any event, the statutory language the court considered in *Bowen* is substantially the same as that relied upon by the Defendant in this case.

In *Bowen*, the defendant had been charged with two DUI offenses: one occurring on May 17, 1999, and one on June 16, 1999. He was convicted of the May 17 offense on July 27, 1999. The State then obtained an indictment for second-offense DUI for the June 16 offense. The trial court granted the defense motion to dismiss the count of the

indictment charging the second-offense enhancement, reasoning that "the first conviction did not occur 'before [the defendant] was charged with DUI in the present case." The State appealed. The court examined the Code section permitting a defendant to be classified as a repeat or multiple offender if the defendant had a conviction which occurred within ten years of "the present violation" and held that the Defendant could be charged with second-offense DUI for the June 16 incident, even though no previous conviction for DUI existed at the time of the June 16 incident. Thus, the court measured the ten-year period "from conviction to conviction" and concluded "that the defendant may be prosecuted for DUI, second offense, even though his first conviction occurred after the alleged DUI offense in the present case occurred." *Bowen*, 67 S.W.3d at 828.

This court considered a similar challenge, based upon the *ex post facto* guarantees of the state and federal constitutions, in *State v. Leroy Nevils*, No. M2003-00520-CCA-R3-CD, 2004 WL 367729, at *5-6 (Tenn. Crim. App. Feb. 26, 2004). The facts of *Leroy Nevils* are like those in the present case. *Leroy Nevils* was charged with a DUI occurring on March 17, 2001, and with a second DUI occurring on March 30, 2001. He was convicted of the March 30 DUI on December 12, 2001. He was convicted of the March 17 DUI on July 9, 2002, and the conviction was enhanced on the basis that it was second offense, relying on the December 12, 2001 conviction for the March 30 offense. The court rejected the defendant's argument that *ex post facto* projections prohibited enhanced sentencing for the March 17, 2001 offense. In reaching this conclusion, the court noted that the December 12, 2001 conviction occurred within ten years of the July 9, 2002 conviction. *Leroy Nevils*, 2004 WL 367729, at *6. Thus, the court focused on the dates of the convictions and whether they were within ten years of each other, not the order in which the offenses occurred. As the court observed, "It is of no consequence that the actual offense occurred prior to the first conviction." *Id.*

The Defendant in the present case argues that a DUI charge prosecuted as a second offense must occur second in time to the DUI offense that forms the basis of the second-offense enhancement. *Bowen*'s statutory interpretation of the enhancement statute, focusing on the dates of the respective convictions, rather than the order of the offenses, is controlling law. *Leroy Nevils* further supports our conclusion that the order in which the offenses occurred is not determinative of whether a DUI charge may be prosecuted as a second offense in the face of an existing DUI conviction within the relevant ten-year period. Finally, Code section 55-10-411(b)(2) focuses on the existence of a prior *conviction*, which must be alleged in the indictment, and does not require that the incident which forms the basis for the prior conviction predate the incident which forms the basis for the offense subject to the second-offense enhancement.

The Defendant is not entitled to relief on this basis.

## II

## Sufficiency of the Evidence

The Defendant contends that the evidence is insufficient to support his convictions for DUI, violation of the open container law, violation of the financial responsibility law, and violation of the implied consent law. He argues that, because the jury acquitted him of driving while his license was revoked, it found that he was not his car's driver in the January 28, 2023 incident. He also argues that he was not driving and that he was not in physical control of his car because it was immobile. The State responds that the Defendant is not entitled to relief from his convictions because of an inconsistent verdict on the count charging driving while his license was revoked. We agree with the State.

In determining the sufficiency of the evidence, the standard of review is "whether, after viewing the evidence in the light most favorable to the prosecution, *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *Jackson v. Virginia*, 443 U.S. 307, 319 (1979); *see State v. Vasques*, 221 S.W.3d 514, 521 (Tenn. 2007). The State is "afforded the strongest legitimate view of the evidence and all reasonable inferences" from that evidence. *Vasques*, 221 S.W.3d at 521. The appellate courts do not "reweigh or reevaluate the evidence," and questions regarding "the credibility of witnesses [and] the weight and value to be given the evidence . . . are resolved by the trier of fact." *State v. Bland*, 958 S.W.2d 651, 659 (Tenn. 1997); *see State v. Sheffield*, 676 S.W.2d 542, 547 (Tenn. 1984).

"A crime may be established by direct evidence, circumstantial evidence, or a combination of the two." *State v. Hall*, 976 S.W.2d 121, 140 (Tenn. 1998); *see State v. Sutton*, 166 S.W.3d 686, 691 (Tenn. 2005). "The standard of review 'is the same whether the conviction is based upon direct or circumstantial evidence.'" *State v. Dorantes*, 331 S.W.3d 370, 379 (Tenn. 2011) (quoting *State v. Hanson*, 279 S.W.3d 265, 275 (Tenn. 2009)).

"It is well established that the identity of the perpetrator is an essential element of any crime." *State v. Miller*, 638 S.W.3d 136, 158 (Tenn. 2021). The identity of the perpetrator is a question of fact for the jury to determine. *State v. Thomas*, 158 S.W.3d 361, 388 (Tenn. 2005). Circumstantial evidence alone may be sufficient to establish the perpetrator's identity. *State v. Reid*, 91 S.W.3d 247, 277 (Tenn. 2002). We apply the same standard of review, whether the evidence is direct or circumstantial. *Dorantes*, 331 S.W.3d at 379.

Our supreme court has said that "inconsistent verdicts of multiple charges against a single defendant may take the form of an inconsistency between a conviction and an acquittal." *State v. Davis*, 466 S.W.3d 49, 72 (Tenn. 2015). In *Davis*, the court noted that

a jury is permitted to convict a defendant of felony murder and acquit the defendant of the underlying felony. *Id.* Therefore, a "defendant is not entitled to relief from the felony murder conviction in this situation as long as the evidence [is] sufficient to support [the] murder conviction." *Id.*; *see Wiggins v. State*, 498 S.W.2d 92, 94 (Tenn. 1973) ("This Court will not upset a seemingly inconsistent verdict by speculating as to the jury's reasoning if we are satisfied that the evidence establishes guilt of the offense upon which the conviction was returned."). The court "emphasize[d] that '[t]he validity accorded to [inconsistent] verdicts recognizes the sanctity of the jury's deliberations and the strong policy against probing into its logic or reasoning, which would open the door to interminable speculation.'" *Davis*, 466 S.W.3d at 77 (quoting *United States v. Zane*, 495 F.2d 683, 690 (2d Cir. 1974)).

The Defendant's inconsistent verdict argument is without merit. His acquittal of driving while his license was revoked does not invalidate his remaining convictions on the speculative basis that the jury rejected the evidence that he drove his car immediately before his January 28, 2023 police encounter. *See id.*; *Wiggins*, 498 S.W.2d at 94.

At its core, the Defendant's argument focuses on the State's proof of the Defendant's identity as the perpetrator. The evidence showed that the victim went outside within one minute of hearing a collision. The victim saw the Defendant emerging from his car's passenger side, and the car key was later found on the passenger seat. The Defendant offered to pay for the damage to the victim's car, begged the victim not to call the police, and made statements about what would happen to him because of the collision. The driver's door was damaged in the collision to the point of inoperability. The Defendant argues that an unidentified driver had fled through the driver's window or through the passenger door. From the evidence presented, a rational jury could conclude beyond a reasonable doubt that the Defendant had been the car's driver and therefore the perpetrator of the offenses.

## A.    Driving Under the Influence

The statute prohibiting driving under the influence provides:

It is unlawful for any person to drive or to be in physical control of any automobile or other motor driven vehicle on any of the public roads and highways of the state, or on any streets or alleys, or while on the premises of any shopping center, trailer park, or apartment house complex, or any other premises that is generally frequented by the public at large, while:

(1)    Under the influence of any intoxicant, marijuana, controlled substance, controlled substance analogue, drug, substance affecting the central nervous system, or combination

thereof that impairs the driver's ability to safely operate a motor vehicle by depriving the driver of the clearness of mind and control of oneself that the driver would otherwise possess[.]

T.C.A. § 55-10-401(1).

The Defendant argues that he was not driving and that he was not in physical control of his car because it was immobile. As we have stated, the evidence is sufficient to support a conclusion beyond a reasonable doubt that he was the car's driver. To the extent that he argues that he was not in physical control of the car due to its damage in the collision, he ignores the overwhelming circumstantial proof that he drove his car before and at the time of the collision. The State also presented evidence that the Defendant was intoxicated and that he drove in the area outside an apartment, and the jury saw video evidence which demonstrated (1) the Defendant's general affect, his slurred and rambling speech, and his poor performance on field sobriety tests, and (2) his car's location on a street. The State presented sufficient evidence, from which a rational jury could conclude beyond a reasonable doubt, that the Defendant was guilty of DUI.

## B.    Violation of the Open Container Law

"No driver shall consume any alcoholic beverage or beer or possess an open container of alcoholic beverage or beer while operating a motor vehicle in this state." T.C.A. § 55-10-416(a)(1). The record reflects that an open beer can and a brandy bottle were found in the Defendant's car, that the Defendant exhibited signs of having ingested alcohol, and that no other occupant of the car was seen. As we stated above, a rational jury could conclude beyond a reasonable doubt that the Defendant was the car's driver. The evidence is sufficient to support the conviction for violating the open container law. The Defendant is not entitled to relief on this basis.

## C.    Violation of the Financial Responsibility Law

Tennessee law requires that a driver involved in a collision must provide the responding law enforcement officer with evidence of financial responsibility. *Id.* § 55-12-139(b)(1)(C). Failure to provide such evidence is a violation of the financial responsibility law. *Id.* at (c)(1). Officer Conner testified that the Defendant admitted that he did not have insurance. Again, the evidence was sufficient to show that the Defendant was driving his car at the time of the collision. The evidence was also sufficient to show that the Defendant violated the financial responsibility law. He is not entitled to relief on this basis.

**D.      Violation of the Implied Consent Law**

"The operator of a motor vehicle in this state is deemed to have given implied consent to breath tests, blood tests, or both tests, for the purpose of determining the alcohol or drug content of that operator's blood." *Id.* § 55-10-406(d)(1).  Failure of a motor vehicle operator to submit to testing after being advised of the consequences of failing to do so is a violation of the implied consent law.  *Id.* at (d)(4).  Officer Conner testified that, after being advised of the consequences for failure to comply with the implied consent law, the Defendant declined to submit to blood alcohol content testing.  The trial court did not err in concluding that the State established, by a preponderance of the evidence, that the Defendant violated the implied consent law.  *See State v. Freeman*, 402 S.W.3d 643, 651 (Tenn. Ct. App. 2012) (preponderance of the evidence burden of proof).

Although not raised by the parties, we observe that on the judgment forms for Count 1, DUI second offense; Count 2, violation of the open container law; and Count 3, violation of the financial responsibility law, a box has been checked which designates, "The Defendant having been found guilty is rendered infamous and ordered to provide a biological specimen for the purpose of DNA analysis."  These offenses are misdemeanors. *See* T.C.A. §§ 55-10-401(1) (DUI), 55-10-402(a)(2) (sentencing for second-offense DUI), 55-10-416 (open container law), 55-12-139 (financial responsibility).  A person who commits a felony is rendered infamous.  *Id*. § 40-20-112 (Supp. 2025).  The statute which authorizes DNA specimen collection from those convicted of certain criminal offenses does not empower such collection from defendants convicted of DUI, violation of the open container law, and violation of the financial responsibility law.  *See id.* § 40-35-321 (Supp. 2025).  The judgment forms for Counts 1, 2, and 3 each contain a clerical error.  The case is remanded for correction of the judgments by omitting the check to the box declaring the Defendant infamous and ordering collection of a DNA specimen.

In consideration of the foregoing and the record as a whole, the judgments of the trial court are affirmed.  The case is remanded for correction of the judgment forms in Counts 1, 2, and 3.

**s/ Robert H. Montgomery, Jr.**
ROBERT H. MONTGOMERY, JR., JUDGE