IN THE COURT OF APPEALS OF TENNESSEE
AT NASHVILLE
Assigned on Briefs June 1, 2017

## ANDREA RENAE HOPWOOD v. COREY DANIEL HOPWOOD

**Appeal from the Chancery Court for Williamson County**
**No. 41444     Michael Binkley, Judge**

_____

**No. M2016-01752-COA-R3-CV**

_____

In this post-divorce proceeding, father appeals the trial court's finding that he was guilty of civil contempt in failing to pay court-ordered financial obligations relative to the parties' divorce. We affirm the trial court's finding that Father was in willful contempt of court, but reverse the trial court's decision to jail Father until he made an $8,122.43 purge payment.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Chancery Court Affirmed in Part, Reversed in Part, and Remanded**

J. STEVEN STAFFORD, P.J., W.S., delivered the opinion of the court, in which D. MICHAEL SWINEY, C.J., and ANDY D. BENNETT, J., joined.

Matthew J. Crigger, Brentwood, Tennessee, for the appellant, Corey Daniel Hopwood.

Russ Heldman, Franklin, Tennessee, for the appellee, Andrea Renea Hopwood.

## OPINION

### Background

This is a post-divorce civil contempt proceeding. The parties, Andrea Renea Hopwood ("Mother") and Corey Daniel Hopwood ("Father"), were divorced by order of the Williamson County Chancery Court on April 18, 2015, which is reflected in this Court's prior Opinion. *See Hopwood v. Hopwood*, No. M2015-01010-COA-R3-CV, 2016 WL 3537467, at *1 (Tenn. Ct. App. June 23, 2016) ("*Hopwood I*"). Therein, the trial court ruled that, based on Father's voluntary underemployment, his income would be calculated at approximately $100,000.00 to $110,000.00 per year. As such, the trial court ordered Father to pay $2,056.00 in monthly child support, $2,500.00 in rehabilitative

alimony for 180 months, $169,000.00 in alimony in solido, and Mother's attorney's fees of $42,901.50. Father was also ordered to pay certain medical bills incurred for the parties' minor children prior to the divorce decree as well as a portion of any future medical bills. As the primary residential parent of the children, Mother was required to send Father notice of the medical bills within ten days of her receipt.

Father timely sought to appeal the trial court's ruling. Thereafter, the trial court also ruled that Father would pay Mother $3,000.00 for attorney's fees that she anticipated to incur on appeal and that Father would secure a bond or irrevocable letter of credit in the amount of at least $216,000.00 to secure Mother's award pending appeal.

While Father's appeal was pending, Mother filed her first civil contempt petition against Father for his failure to pay pendent lite support prior to the entry of the divorce decree. Eventually, the trial court ruled that Father had willfully failed to pay certain sums to Mother and remanded Father to jail until he made a purge payment of $2,300.00 in outstanding support and $500.00 for attorney's fees and discretionary costs. Father was incarcerated, but was released upon payment of the $2,800.00 purge payment.

Mother filed a second motion for civil contempt on November 24, 2015. In response, Father argued that a motion was not the appropriate vehicle to commence a civil contempt proceeding because the underlying divorce was no longer pending in the trial court. As such, on December 17, 2015, Mother filed a petition to have Father held in civil contempt for his willful failure to pay outstanding credit card bills, medical bills, attorney's fee awards, and alimony for September, October, November, and December 2015. In addition, Mother alleged that Father failed to timely make his child support payments, though Mother admitted that Father had eventually made the required payments. The petition also alleged that Father had failed to provide that he had secured a life insurance policy or to sign a quitclaim deed of the marital residence, as required by the divorce decree. Mother further alleged that Father failed to provide the trial court with proof of the bond or irrevocable letter of credit required by the trial court to pursue Father's appeal or to pay the $3,000.00 to cover Mother's anticipated attorney's fees. Based on these allegations of willful misconduct, Mother requested that Father be placed in jail "until every last cent is paid in full which he owes." Father filed an answer, generally denying that he had willfully failed to make payments. Father also denied without elaboration the allegations concerning his obligation to execute a quitclaim deed or secure life insurance. On December 21, 2015, the trial court entered an order directing Father to supply to Mother documents detailing his personal financial situation, as well as the finances of his company. The trial court also set the hearing on Mother's petition for January 5, 2016.

The hearing occurred as scheduled on January 5, 2016, but was not concluded. On January 7, 2016, Mother filed an additional motion for civil contempt related to Father's failure to pay January alimony and child support, due on January 1, 2016. The hearing

concluded on January 21, 2016. Only the parties testified. Generally, Mother's testimony consisted of detailing the obligations Father failed to meet and the notice provided to Father of the obligations. In turn, Father generally did not disagree that he had failed to pay his obligations, but contended that he was financially unable to do so. Father argued, however, that he did not receive proper notice of some of the medical bills. Father's testimony largely focused on his current income and his expenses. Generally, there was no dispute that Father's expenses were reasonable. Father testified that his income is approximately $3,800.00 per month and that he is unable to meet the financial obligations as required by the divorce decree.[1] Like in the divorce proceeding, however, there was considerable testimony concerning whether Father was manipulating his income through his company, of which he is the sole member and employee. For example, Father testified first that he uses his company's credit card only to make "loans" to himself. Father later admitted that certain charges on the company's credit card were for personal expenses, such as movie theater ticket purchases. On the first day of trial, Father testified that, despite sending out over twenty resumes, he had only received one offer of employment, which salary was no more than he was currently earning. By the time of the second hearing, Father testified that he had in fact been in contact with another company for several months and had recently agreed to work for that company at a salary of $52,000.00 per year, plus commissions.

In addition, when asked what Father had paid his attorney for the appeal of the divorce decree, Father testified that he had paid approximately $6,000.00. Father's attorney, however, interjected that he did not wish for Father to perjure himself and that the figure was actually over $20,000.00. Father later admitted that he had paid his attorney $3,000.00 and that his mother had paid $20,000.00 for purposes of litigating the initial appeal. Father also admitted that he had reduced the balance of his personal credit card by $3,000.00 but submitted that the reduction was not due to a payment, but merely a balance transfer. Father also testified that his only asset was his automobile, worth approximately $4,000.00. Without collateral, Father testified that he was unable to secure the bond or irrevocable letter of credit required by the trial court; however, Father submitted no rejection letters or application to show that he had indeed attempted to obtain the bond. After the conclusion of the proof, the parties were invited to submit proposed findings of fact and conclusions of law.

After the final hearing, but prior to the entry of the trial court's order, this Court issued its Opinion in **Hopwood I** on June 23, 2016. Therein, this Court affirmed the trial court's imputation of income to Father of approximately $100,000.00 to $110,000.00, the

---

[1] This figure is even lower than the approximately $60,000.00 that Father asserted he would earn per year at the time of the divorce trial, but Father testified that his business had done more poorly than expected. *See* **Hopwood I**, 2016 WL 3537467, at *3. At the contempt trial, Father testified that he supplements the income he receives from his company with income from working at a restaurant on a part-time basis.

child support calculation, and the division of marital property, including the $219,000.00 alimony in solido award. *Hopwood I*, 2016 WL 3537467, at *6–11. This Court reversed, however, the trial court's award of rehabilitative alimony to Mother for fifteen years, instead reducing the award to no more than eight years. *Id.* at *14. In addition, having determined that even imputing income to Father in the maximum amount found by the trial court, Father was unable to pay the $2,500.00 in alimony awarded by the trial court. Accordingly, this Court vacated the periodic alimony award and remanded to the trial court "for reconsideration of what, if any, of Mother's need for alimony Father has the ability to pay given his income of $110,000.00 per year." *Id.* at *15. Likewise, we vacated the trial court's award of $42,901.50 in attorney's fees to Mother and remanded for consideration of the amount of "attorney's fees that are attributable only to issues involving child custody and child support." *Id.* at *16. We also reversed the trial court's award of attorney's fees to Mother in anticipation of the appeal, holding that such an award is unauthorized. *Id.* Finally, given Father's inability to pay and the resolution of the issues, we declined to award attorney's fees incurred on appeal. *Id.*

After the issuance of *Hopwood I*, on July 12, 2016, the trial court issued its memorandum and order on Mother's petition for civil contempt. The trial court noted that this Court had vacated its prior judgment regarding alimony and attorney's fees incurred on appeal. The trial court therefore indicated that it "will not address the issues concerning unpaid alimony"; later in the order, however, the trial court found that Father had failed to meet his alimony obligation. Likewise, the trial court appears to have declined to find Father in civil contempt for his failure to pay the attorney's fees awarded to Mother in anticipation of this appeal. The trial court also declined to find Father in contempt for his failure to execute a quit claim deed or to obtain life insurance, as Father had agreed to meet those obligations while the case was pending. With regard to the remaining charges, however, the trial court found that Father failed to pay a total of $2,800.00 in attorney's fees owed to Mother, $3,840.00 in credit card bills, and $614.90 in medical bills required to be paid pursuant to the divorce decree. The trial court also found Father in contempt for the willful failure to pay $867.53 in medical bills required to be paid by the parties' permanent parenting plan. The trial court found that, based upon evidence that Father was able to borrow money from credit cards and family members, as well as his general lack of credibility, Father had the ability to pay these obligations at the time of the contempt hearing. Thus, the trial court ruled that Father's failure to pay his obligations was willful and constituted contempt. The trial court therefore ordered Father to pay the total amount of $8,122.43 by July 28, 2016, or be remanded to jail until he purged the contempt.[2]

One day before Father was required to purge his contempt or surrender to jail, Father filed a motion for appointed counsel and to stay the trial court's judgment pending

---

[2] The trial court also directed Father to take other actions required by the parties' divorce decree, which actions are not at issue in this appeal.

appeal.[3] Attached to Father's motion was a Uniform Affidavit of Indigency. The parties thereafter appeared as scheduled on July 28, 2016. Father informed the trial court that he was unable to pay the judgment and was remanded to jail. On August 1, 2016, the trial court entered an order memorializing its decision to incarcerate Father. First, the trial court noted yet again that Father was not a credible witness. In addition, the trial court noted that this Court affirmed its previous ruling to set Father's child support based upon imputed income of $100,000.00. The trial court therefore found that Father had the ability to pay the $8,122.43 ordered and that he should be incarcerated until such payment was made. Finally, the trial court denied Father's motion to appoint alternate counsel and for a stay. On August 12, 2016, Father filed a pro se notice of appeal. Rather than file an appeal bond or surety, Father indicated on his notice of appeal that he was indigent.[4] Father attached to his notice of appeal a second affidavit of indigence. On August 24, 2016, Mother filed an objection to allowing Father to file his appeal as a pauper. In her motion, Mother alleged that Father had chosen to remain in jail rather than return to work to pay the judgment against him and that he had substantial earning potential. Mother therefore argued that Father should not be permitted to appeal as a "pauper."

An additional hearing was held on September 20, 2016. Father appeared pro se, having been transported from the Williamson County Jail. By order of October 10, 2016, the trial court found that, although Father's situation was the result of Father's own conduct, Father was in fact indigent. The trial court therefore appointed counsel to represent Father in his appeal. Despite the finding of indigence, the trial court made no mention in its order of releasing Father from incarceration.

---

[3] The trial court noted that Father's motion was filed on July 27, 2016. The motion included in the record with this caption has a filing date of August 11, 2016.

[4] We note that the trial court's orders are arguably not final, as the trial court expressly reserved the issue of attorney's fees in both its July 12, 2016, and August 1, 2016 orders. Rule 3 of the Tennessee Rules of Appellate Procedure provides that if multiple parties or multiple claims are involved in an action, any order that adjudicates fewer than all the claims or the rights and liabilities of fewer than all the parties is not final or appealable. Except where otherwise provided, this Court only has subject matter jurisdiction over final orders. *See Bayberry Assoc. v. Jones*, 783 S.W.2d 553 (Tenn. 1990). Contempt proceedings, however, "'are collateral to and independent of the cases or proceedings from which they arise . . . . [C]ontempt proceedings that arise after judgment has been entered . . . do not affect the finality of the judgment.'" *State v. Freeman*, 402 S.W.3d 643, 648 (Tenn. Ct. App. 2012) (quoting *Poff v. Poff*, No. 01-A-01-9301-CV00024, 1993 WL 73897 at *2 (Tenn. Ct. App. March 17, 1993)). Here, however, the issue of attorney's fees was part and parcel of Mother's contempt petition, rather than arising from the underlying divorce. Regardless, under Rule 2 of the Tennessee Rules of Appellate Procedure, this Court may waive the finality requirement when justice so requires. *See* Tenn. R. App. P. 2. ("For good cause, including the interest of expediting decision upon any matter, the Supreme Court, Court of Appeals, or Court of Criminal Appeals may suspend the requirements or provisions of any of these rules in a particular case on motion of a party or on its motion and may order proceedings in accordance with its discretion[.]"); *Bayberry*, 783 S.W.2d at 559 ("[W]e find no bar to the suspension of Rule 3(a)."). Because of the grave nature of proceedings seeking to incarcerate litigants, we exercise our discretion to proceed to consider the merits of this appeal.

In the meantime, similar proceedings concerning Father's indigence were taking place in the Court of Appeals. On September 6, 2016, and October 7, 2016, Father, proceeding pro se, filed motions for this Court to review the trial court's denial of his motion for stay pending appeal. On October 14, 2016, Father's newly appointed counsel filed a supplemental motion on his behalf for review of the trial court's denial of the stay pending appeal. Therein, Father alleged that he was still incarcerated, thereby frustrating Father's ability to earn income to comply with his obligations. On October 17, 2016, this Court granted Father's motion for a stay, having determined that "[a]bsent a stay, the appellant will have served a substantial amount of time in jail before his appeal can be decided." The Court therefore ordered that Father be released from incarceration "immediately."

## Issues Presented

Father raises three issues, which we consolidate into two issues:

1. Whether the trial court erred in finding Father in civil contempt for willful failure to pay outstanding obligations and ordering him incarcerated until he made a payment of $8,122.43.
2. Whether the trial court erred in finding Father in contempt for certain medical bills that were allegedly not named in Mother's contempt petition.

In the posture of Appellee, Mother also seeks an award of attorney's fees on appeal.

## Discussion

Tennessee courts have the power to punish litigants for failure to comply with their orders. *See generally* **Konvalinka v. Chattanooga-Hamilton Cnty. Hosp. Auth.**, 249 S.W.3d 346, 354 (Tenn. 2008) (citing Tenn. Code Ann. § 16-1-103). Relevant to this appeal, Tennessee Code Annotated section 29-9-102(3) empowers the courts to use their contempt powers in circumstances involving "[t]he willful disobedience or resistance of any officer of the such courts, party, juror, witness, or any other person, to any lawful writ, process, order, rule, decree, or command of such courts." "This provision enables the courts to maintain the integrity of their orders." **Konvalinka**, 249 S.W.3d at 354 (citing **Wilson v. Wilson**, 984 S.W.2d 898, 904 (Tenn. 1998)).

The Tennessee Supreme Court explained the four essential elements of a successful civil contempt claim as follows:

First, the order alleged to have been violated must be "lawful." Second, the order alleged to have been violated must be clear, specific, and unambiguous. Third, the person alleged to have violated the order must

have actually disobeyed or otherwise resisted the order. Fourth, the person's violation of the order must be "willful."

*Konvalinka*, 249 S.W.3d at 354–55 (footnotes omitted). After determining that a person before the court has willfully violated a lawful and sufficiently clear order, the court may, in its discretion, hold the person in civil contempt. *Id.* at 358 (citing *Robinson v. Air Draulics Eng'g Co.*, 214 Tenn. 30, 37, 377 S.W.2d 908, 912 (1964)). The court's decision is entitled to great weight; therefore, we review the trial court's decision under the abuse of discretion standard. *Konvalinka*, 249 S.W.3d at 358 (citing *Hawk v. Hawk*, 855 S.W.2d 573, 583 (Tenn. 1993); *Hooks v. Hooks*, 8 Tenn. Civ. App. (Higgins) 507, 508 (Tenn. Ct. App. 1918)). Consequently, we are not permitted to substitute our own judgment for that of the court whose decision is being reviewed. *Konvalinka*, 249 S.W.3d at 358 (citing *Williams v. Baptist Mem'l Hosp.*, 193 S.W.3d 545, 551 (Tenn. 2006); *Eldridge v. Eldridge*, 42 S.W.3d 82, 85 (Tenn. 2001)).

Father does not dispute that he violated a clear order to make monetary payments to Mother for medical expenses both prior to and after the parties' divorce, attorney's fees, and credit card payments in the total amount of $8,122.43. Rather, Father argues that the trial court erred in finding that he willfully failed to obey the trial court's orders because he did not have the ability to comply with the trial court's orders. In the alternative, Father asserts that the trial court erred in continuing to hold Father in confinement after entering an order finding him indigent. Although Father couches these arguments in terms of the element of willfulness, this Court has noted that the Tennessee Supreme Court "was quite specific in holding that willfulness and ability are two distinct findings." *Martin v. Moats*, No. M2004-01921-COA-R3-CV, 2006 WL 2527641, at *2 (Tenn. Ct. App. Aug. 24, 2006) (citing *Ahern v. Ahern*, 15 S.W.3d 73, 79 (Tenn. 2000)); *see also Dukes v. Dukes*, No. M2014-00847-COA-R3-CV, 2015 WL 9946275, at *4 (Tenn. Ct. App. Aug. 13, 2015) (addressing ability to pay only in the context of the sanction imposed by the trial court for the contemptuous conduct). In the context of civil contempt, willfulness simply refers to "acting contrary to a known duty" or conduct that is "intentional or voluntary rather than accidental or inadvertent." *Konvalinka*, 249 S.W.3d at 357 (quoting *State ex rel. Flowers v. Tennessee Trucking Ass'n Self Ins. Grp. Trust*, 209 S.W.3d 602, 612 (Tenn. Ct. App. 2006)). Here, both in the trial court and in his appellate brief, Father's arguments generally focused on the proof concerning his ability to pay the ordered obligations and the sanction thereafter imposed upon Father. Accordingly, we confine our review in this appeal to whether the trial court imposed an appropriate sanction based upon the proof submitted concerning Father's ability to pay.

Upon a finding of civil contempt, "[a] court can imprison an individual to compel performance of a court order." *Ahern*, 15 S.W.3d at 79. This remedy is only available, however, when the contemnor "has the ability to comply with the order at the time of the contempt hearing." *Id.* (citing Tenn. Code Ann. § 29-9-104 ("If the contempt consists in an omission to perform an act which it is yet in the power of the person to perform, the person may be imprisoned until such person performs it.")). "Thus, with civil contempt,

the one in contempt has the 'keys to the jail' and can purge the contempt by complying with the court's order." *Ahern*, 15 S.W.3d at 79. A finding of civil contempt is therefore intended to benefit the opposing party by forcing the contemnor to comply with his or her obligation. *Id.* (citing *Shiflet v. State*, 217 Tenn. 690, 693, 400 S.W.2d 542, 543 (Tenn. 1966)).

"Although the party to be held in civil contempt must have the ability to perform the act it is ordered to perform, . . . the burden of proof is on the contemnor to show the inability to pay." *Flowers*, 209 S.W.3d at 612 (citing *Leonard v. Leonard*, 207 Tenn. 609, 341 S.W.2d 740, 743 (Tenn. 1971)). "When the defendant testifies under oath that he is without financial ability to conform, an adjudication that he has the ability to pay must rest upon convincing evidence so that the trier of facts may exercise his sound judicial discretion thereon." *Leonard*, 341 S.W.2d at 743–43. Of course, "a party cannot willfully disable himself from obeying an order of court and then set up his inability as a defense to a charge of contempt." *Hawk v. Hawk*, 855 S.W.2d 573, 583 (Tenn. 1993) (quoting *Gossett v. Gossett*, 34 Tenn.App. 654, 658, 241 S.W.2d 934, 936 (Tenn. 1951)). Thus, where a party has "intentionally placed himself in a position in which he would be unable to comply with the court's . . . order," the obligor may be found in contempt. If, however, the contemnor does not have the present ability to comply with the obligation, the contemnor "cannot be sentenced for repeated offenses as the trial judge decided, but only for a single act of contempt." *Hawk*, 855 S.W.2d at 583. Rather, "it is only when he has the present ability to perform that he can be committed until he does perform." *Gossett*, 241 S.W.2d at 936. "If he is wholly unable to perform, he can be punished only by fine not exceeding $50, or imprisonment for not more than 10 days, or both." *Id.* (citing the criminal contempt statute then in effect).

Here, the trial court made detailed findings regarding Father's income and his purported inability to pay. Specifically, the trial court again noted that Father lacked candor with the Court regarding his income and indicated that Father's stated income "would be an undoubtedly higher number" were Father to give an accurate account of loans he made to himself through his business. Moreover, Father had recently accepted a job earning more than $52,000.00 per year. Finally, the trial court found that Father was able to borrow $20,000.00 from his mother to pay appellate attorney's fees, as well as had the ability to repay loans made to him from his company. As a result, the trial court found that Father had the present ability to pay $8,122.43, or alternatively, that Father "intentionally put himself in a position where he would not have the money" to pay his debts.

As an initial matter, we note that in *Hopwood I*, this Court affirmed the trial court's finding that Father was willfully and voluntarily underemployed. *See Hopwood*, 2016 WL 3537467, at *10. Although this finding is not conclusive as to Father's present ability to pay at the time of the contempt hearings, it does provide considerable support for a determination that Father's alleged inability to pay is the result of his own

intentional conduct. *See Hawk*, 855 S.W.2d at 583. The evidence presented at the contempt hearings does not undermine this determination. For example, while Father testified that he had applied to multiple jobs in the time prior to the contempt proceeding, he submitted no documentary proof to support his assertions, such as applications or rejection letters.

While in many cases unsupported testimony may be sufficient to establish a fact in issue, the trial court here made a specific finding that Father lacked credibility. When the resolution of the issues in a case depends upon the truthfulness of witnesses, the trial judge who has the opportunity to observe the manner and demeanor of the witnesses while testifying is in a far better position than this Court to decide those issues. *In re Arteria H.*, 326 S.W.3d 167, 176 (Tenn. Ct. App. 2010) (citing *McCaleb v. Saturn Corp.*, 910 S.W.2d 412, 415 (Tenn. 1995)). If the trial court's factual determinations are based on its assessment of witness credibility, this Court will not reevaluate that assessment absent clear and convincing evidence to the contrary. *Franklin Cnty. Bd. Of Educ. v. Crabtree*, 337 S.W.3d 808, 811 (Tenn. Ct. App. 2010) (citing *Jones v. Garrett*, 92 S.W.3d 835, 838 (Tenn. 2002)). Father has shown no clear and convincing proof to overturn the trial court's credibility findings against him.

Indeed, other evidence illustrates both Father's lack of credibility and his lack of candor regarding his employment prospects. During the January 5, 2016 hearing, Father testified that his job search had resulted in a single offer of employment at a salary less than his current income. Father's testimony differed at the January 21, 2016 hearing, however, when he testified that he had been negotiating for months regarding an offer of employment with another company. Given our previous determination that Father was willfully and voluntarily underemployed coupled with his lack of credibility and candor regarding his income and employment prospects during the contempt hearing, we must conclude that Father's inability to pay, if any, is the result of his own contumacious conduct. The trial court therefore did not err in finding Father in civil contempt for his failure to meet his financial obligations as outlined by the July 12, 2016 order.

That is not to say, however, that the remedy imposed by the trial court was correct in this case. Here, the trial court entered an order on October 10, 2016, specifically finding that Father was indigent, albeit through his own conduct. Voluntary or not, once Father was found to be unable to pay his obligations, the Tennessee Supreme Court has unequivocally held that the contemnor may **not** "be committed until he does perform." *Gossett*, 241 S.W.2d at 936. Indeed, when the contemnor lacks the ability to comply with the violated order, the contemnor no longer has the "keys to the jail" and therefore "can[not] purge the contempt by complying with the court's order." *Ahern*, 15 S.W.3d at 79.

In a similar circumstance, the Tennessee Supreme Court remanded the case to the trial court for resentencing. *See Hawk*, 855 S.W.2d at 583 (involving an order for the

- 9 -

contemnor to pay a fine of $25.00 per day until he complied with the trial court's visitation order). In this case, however, Father was incarcerated from July 28, 2016, to October 17, 2016, a period of over eleven weeks. During this time, Father's financial obligations no doubt mounted, while he was prevented from earning income to meet them. Although Mother appears to maintain her desire for Father to remain incarcerated, we cannot discern how Father's refusal or inability to pay his financial obligations will be remedied by further jail time. Considering the record before us, we conclude that based upon the trial court's indigence finding on October 10, 2016, no further incarceration is warranted for Father's civil contempt in failing to pay $8,122.43 in obligations owed to Mother.[5] We therefore reverse the trial court's order remanding Father to jail until the payment of $8,122.43. Father's obligation to pay Mother $8,122.43 in outstanding obligations, however, has not been extinguished.

## II.

Father next argues that the trial court erred in finding that certain medical bills incurred after the divorce were "due and owing," as these bills were allegedly never provided to Father. Here, there is no dispute that the parties' permanent parenting plan requires that the parties divide unpaid medical expenses pro rata according to their incomes as found by the trial court in its order. As such, Father was required to shoulder 86% of unpaid medical expenses. The procedure for the payment of unpaid medical expenses is also detailed in the permanent parenting plan: "After insurance has paid its portion, the parent receiving the bill will send it to the other parent within ten days. The other parent will pay his share within 30 days of receipt of bill."

In its detailed order, the trial court divided the outstanding medical bills into five tables, with totals as follows:

- Table 1 - $867.54
- Table 2 – $652.81
- Table 3 - $469.93
- Table 4 – $508.79
- Table 5 – $337.81
- 

---

[5] Mother argues in her brief that this issue is moot based upon this Court's order releasing Father from incarceration pending appeal. "[A] case will be considered moot if it no longer serves as a means to provide some sort of relief to the prevailing party." *Ford Consumer Fin. Co. v. Clay*, 984 S.W.2d 615, 616 (Tenn. Ct. App. 1998). Respectfully, we do not agree. Here, this Court entered an order releasing Father from incarceration only "pending resolution of this appeal." Nothing in our order granting the stay indicates that the decision therein would have an effect on the trial court's ability to once again imprison Father were its decisions affirmed by this Court. As such, regardless of the order granting the stay, Father maintains a vested interest in not being once again remanded to jail until he makes the ordered purge payment.

At trial, Father disputed that he received proper notice of the bills contained in Tables 2 through 5 in accordance with the permanent parenting plan.[6] As such, the trial court noted that it was "unable to find that [Mother] carried her burden of showing that [Father] received these bills or received them with proper notice, as is required for this Court to conclude that [Father] is in contempt." The trial court went on to conclude, however, that Father was not relieved of paying the bills as required by the parties' permanent parenting plan, and that "[t]he bills should now be paid" by Father pursuant to the trial court's previous orders.

On appeal, Father argues that the trial court erred in this finding because "the issue was not raised by the parties and not properly at issue in the contempt hearing." First, we note that Father cites no law to support this argument in his appellate brief. The Tennessee Supreme Court has noted that "[c]ourts have routinely held that the failure . . . to cite relevant authority in the argument section of the brief as required by Rule 27(a)(7) constitutes a waiver of the issue." **Bean v. Bean**, 40 S.W.3d 52, 55 (Tenn. Ct. App. 2009) (citing cases). "It is not the role of the courts, trial or appellate, to research or construct a litigant's case or arguments for him or her, and where a party fails to develop an argument in support of his or her contention or merely constructs a  skeletal argument, the issue is waived." **Sneed v. Bd. of Prof'l Responsibility of Sup. Ct.**, 301 S.W.3d 603, 615 (Tenn. 2010).

Moreover, the trial court did not find Father in contempt for his failure to pay these bills or include these bills in the purge payment required to release Father from incarceration. Rather, it appears that the trial court merely accepted Father's admission that he was required to pay these bills. Indeed, the transcript from the January 21, 2016 hearing contains the following statement from Father with regard to these bills: "I don't dispute that I owe medical bills in my portion." When asked for clarification from the trial court as to the specific medical bills being discussed—i.e., the medical bills allegedly not provided to Father in a timely manner—Father again responded that he did not dispute that he owed these particular medical bills. Pursuant to Rule 36(b) of the Tennessee Rules of Appellate Procedure, "[a] final judgment from which relief is available and otherwise appropriate shall not be set aside unless, considering the whole record, error involving a substantial right more probably than not affected the judgment or would result in prejudice to the judicial process." Given that Father admitted his obligation to pay these bills, as well as the trial court's declination to find Father in contempt based on his failure to pay, we cannot discern how Father was harmed by the trial court's decision. Rather, it appears that the trial court merely affirmed Father's own admission that he was required to meet these obligations. In the absence of any legal authority on this issue, we decline to assign error to the trial court's decision in this regard.

---

[6] Father did not dispute that the bills contained in Table 1 were appropriately considered in the contempt proceeding.

- 11 -

**III.**

Finally, Mother seeks an award of attorney's fees on appeal. In support, Mother asserts that this Court has previously held that an award of attorney's fees is an appropriate sanction for civil contempt citing ***Cremeens v. Cremeens***, No. M2014-01186-COA-R3-CV, 2015 WL 4511921, at \*11 (Tenn. Ct. App. July 24, 2015). ***Cremeens***, however, involved a civil contempt finding under Tennessee Code Annotated Section 29-9-105, the contempt statute related to the performance of a forbidden act. Section 29-9-105 specifically authorizes "the payment of damages" to place the complainant "in status quo." Tenn. Code Ann. § 29-9-105; *see also* ***Reed v. Hamilton***, 39 S.W.3d 115, 120 (Tenn. Ct. App. 2000) (holding that section 29-9-105 authorizes an award of attorney's fees when the contempt involves the performance of a forbidden act). In contrast, the contempt statute at issue in this case authorizes only that the contemnor be imprisoned or "fined, as authorized by law, for each day it is in contempt until it performs the act or pays the damages ordered by the court." Tenn. Code Ann. § 29-9-104 (involving contempt alleging a failure to perform an ordered act). The Tennessee Supreme Court has suggested, however, that an award of attorney's fees may be appropriate when contempt is found under Section 29-9-104. *See* ***Lovlace v. Copley***, 418 S.W.3d 1, 37 n.26 (Tenn. 2013) (citing ***Overnite Transp. Co. v. Teamsters Local Union No. 480***, 172 S.W.3d 507, 510–11 (Tenn. 2005)) (stating that damages are available to a party injured by a contemnor's acts in violation of a court's order and describing the measure of damages as "the actual injury sustained as a result of the contempt"). Even assuming, *arguendo*, that an award of attorney's fees is available in this contempt proceeding, we decline to award such damages in this case given the trial court's determination that Father is indigent. *See* ***Konvalinka***, 249 S.W.3d at 354–55 (noting that sanctions for civil contempt are in the discretion of the court).

**Conclusion**

The judgment in the Williamson County Circuit Court is affirmed in part, reversed in part, and remanded for further proceedings consistent with this Opinion. Costs of this appeal are taxed one-half to Appellant Corey Daniel Hopwood and one-half to Appellee Andrea Renea Hopwood, for all of which execution may issue if necessary.

_____
J. STEVEN STAFFORD, JUDGE