IN THE COURT OF APPEALS OF TENNESSEE
AT JACKSON
April 19, 2022 Session



**KAREN MARCHAND SHAW v. KEVIN MICHAEL SHAW**

**Appeal from the Circuit Court for Shelby County**
**No. CT-2692-19      Gina C. Higgins, Judge[1]**
_____

**No. W2018-00677-COA-R3-CV**
_____

This appeal involves a multitude of challenges brought to the orders of the trial court in a post-divorce dispute involving minor children. We vacate the trial court's decision to sua sponte order a new parenting plan, as well as to enter a temporary and permanent injunction against Mother. We also reverse the trial court's decision to award Father discretionary costs for expert fees regarding an issue on which he did not prevail. Otherwise, we affirm the rulings of the trial court.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Circuit Court Vacated in Part, Reversed in Part, and Affirmed in Part**

J. STEVEN STAFFORD, P.J., W.S., delivered the opinion of the court, in which KENNY ARMSTRONG and CARMA DENNIS MCGEE, JJ., joined.

Karen Marchand Shaw, Lakeland, Tennessee, Pro se.

Susan Mackenzie, Memphis, Tennessee, for the appellee, Kevin Michael Shaw.

**OPINION**

**I. FACTUAL AND PROCEDURAL BACKGROUND**

This appeal involves contentious post-divorce proceedings spanning nearly a decade. Because of the length of the proceedings, we recount the procedural history of this case only to the extent necessary to address the issues on appeal. The parties, Plaintiff/Appellant Karen Marchand Shaw ("Mother" or "Appellant") and Defendant/Appellee Kevin Michael Shaw ("Father" or "Appellee") were divorced in 2009

_____

[1] Although Judge Higgins was the final judge to preside over this case, all of the challenged orders were entered by her predecessor in this case, Chancellor Jim Kyle of the Shelby County Chancery Court.

in the Shelby County Chancery Court ("the trial court"). At the time of the divorce, the parties' two children were four years old. In January 2013, Mother sent Father notice of a proposed relocation; Father filed a petition objecting to the relocation. Following a bench trial, the trial court denied Mother's proposed relocation. The parties were ordered to file a new parenting plan by consent or to file proposed parenting plans for the Court's review. According to the trial court, Mother's proposed plan was incorrectly designated as agreed and entered by the Court. Father filed a motion to alter or amend to correct the error. Eventually, the trial court entered an order correcting its mistake and reinstating the 2009 parenting plan. In March 2016, Mother then filed a petition to modify the 2009 parenting plan. The trial court, Chancellor Jim Kyle presiding, entered a new parenting plan on August 2, 2016. This plan named Mother as the primary residential parent and provided for a flexible parenting schedule taking into account Mother's variable work schedule.

On August 3, 2016, the trial court entered an order awarding Father attorney's fees covering two periods of time: (1) the litigation involving Mother's request to relocate; and (2) the period of time between the denial of the request to relocate and Mother's petition to modify; the trial court denied Father's request for fees relative to "the resolution of the Petition to Modify." Consequently, the trial court awarded Father $122,660.81 in attorney's fees, while denying Mother's request for attorney's fees. The trial court further found that there was no just reason for delay and that the order should be made final pursuant to Rule 54.02 of the Tennessee Rules of Civil Procedure. On August 9, 2016, the trial court assessed costs against Mother.

Mother filed a notice of appeal to this Court on September 1, 2016 ("the second appeal").[2] The notice of appeal indicates that Mother was appealing the orders entered on August 2, 3, and 9, 2016. On February 24, 2017, Mother, acting pro se, filed a motion to voluntarily dismiss her second appeal. The second appeal was dismissed by order of February 28, 2017. A mandate issued on March 6, 2017.

However, the parties' disputes over the minor children were far from over. On several occasions, Mother attempted to obtain orders of protection against Father and/or his wife on behalf of herself and the minor children in general sessions court. These petitions were eventually transferred to the trial court and voluntarily dismissed upon Mother's motion. Father filed his first petition to have Mother held in contempt for her interference with his parenting time in July 2017. On November 8, 2017, Father filed a verified Second Petition for Writ of Scire Facias and Citation for Civil Contempt and Request for Injunctive Relief. Father filed an amended petition on November 16, 2017, in which he included additional allegations concerning Mother's failure to pay medical expenses. As will be discussed in detail, *infra*, following a November 20, 2017 hearing, the trial court granted Father's request for permanent injunctive relief by order of

---

[2] This was Mother's second notice of appeal filed in this case. The first was likewise voluntarily dismissed.

December 4, 2017.[3] Mother responded with her own petition to hold Father in contempt and for injunctive relief, as well as efforts to vacate the permanent injunction.

Father also began his efforts to collect on the attorney's fees judgment, including by filing a lien on Mother's home. Mother strongly resisted Father's collection efforts, in part by continuing to attack the correctness of the August 3, 2016 order awarding attorney's fees. As just one example, on September 26, 2017, Mother filed a motion for relief from the final judgment and to stay its execution. The trial court denied Mother's efforts to obtain relief from the final judgment by order of March 15, 2018. And eventually, Father's efforts to collect on his judgment were rewarded on March 15, 2018, when the trial court granted in part Father's motion to compel the sale of Mother's home to satisfy the judgment under Rule 69.07 of the Tennessee Rules of Civil Procedure. Therein, the trial court ruled that Father could execute on his judgment lien on Mother's home unless one the following conditions was met:

> 1. The children reach eighteen (18) years of age, unless the children are still in high school.
> 2. If the children are still in high school, Father cannot execute on the lien until the children graduate from high school or the class of which the children are members when the children attain eighteen (18) years of age graduates, whichever occurs first.
> 3. Notwithstanding (1) and (2) directly hereinabove, if Mother is no longer living at the home as her primary residence, Father can immediately execute on the lien.

Mother was permitted to sell the home should she see fit. The trial court also ruled on the issue of interest in this order.

On March 20, 2018, the trial court entered an order ruling on five different pending matters filed by the parties: (1) Father's first contempt petition; (2) Father's amended second contempt petition; (3) Mother's contempt petition; (4) Mother's motion for post-hearing facts; and (5) Mother's motion to set aside the permanent injunction.[4] Every request was denied, except that Father's amended second contempt petition was denied in part and granted in part, with the only relief granted was ordering Mother to pay $392.55 toward uninsured medical expenses for the children. The trial court further denied both parties' requests for attorney's fees.

On the same day, the trial court also entered an order titled "Sua Sponte Order

---

[3] The trial court awarded Father attorney's fees in connection with the request for injunctive relief. The trial court did not set the fee until a June 8, 2018 order, wherein Father was awarded fees and expenses totaling $5,713.50.

[4] Father had also filed a third petition for contempt against Mother in December 2017. Father eventually nonsuited this petition.

Striking the Permanent Parenting Plan Entered August 2, 2016 and Establishing New Permanent Parenting Plan." Therein, the trial court noted that "[t]here has been virtually no agreement on any topic whatsoever, much less co-parenting, between the parties over ten years. Such animosity nearly rises to the level of rage." As such, the trial court found that the current plan was unworkable. The trial court therefore entered a new parenting plan maintaining Mother as primary residential parent, but awarding the parties equal co-parenting time under a rather unique framework.[5]

Relevant to this appeal, Father thereafter filed motions to amend both the ruling on Father's Rule 69.07 motion and the sua sponte order entering a new parenting plan. Mother also filed a premature notice of appeal to this Court. On June 7, 2018, Father also filed an emergency motion for the payment of certain medical expenses.

On June 8, 2018, the trial court entered four orders: (1) an order granting Father $3,793.13 in discretionary costs; (2) an order granting Father $2,344.00 in fees and expenses related to a discovery issue; (3) denying Father's emergency motion concerning medical expenses as moot, but holding Mother's request for the payment of travel expenses in abeyance pending proof as to their necessity; and (4) granting Father's motion to alter

---

[5] The plan provided for the parenting schedule to be determined as follows:

Mother and Father shall enjoy parenting time on alternating weeks. There will be no accommodations or variations of this "week on/week off" approach. This schedule is not to be altered in any way, regardless of certain facts that may make such' approach seem unconscionable: for example, Father's birthday could be on Mother's week, Mother's Day could be on Father's week, Christmas could fall on Mother's week, or any other holiday with special significance could fall on a week in which that parent is not exercising parenting time.

The child has the absolute ability to determine if they want to spend their week with either parent. Once a child has been dropped off at a parent's house, the child will not be permitted to leave that parent's home until that parent's week has elapsed. This accommodation is to prevent "going back and forth" and to prevent the children from playing one parent against the other. A child will not be able to say "take me back" once they have begun spending parenting time with one parent. Once the child determines he or she wishes to spend the week at a certain parent's home, the child commits to spending the entire week with that parent. The child does not have to make the determination on Sunday (the first day of the parenting week), but if the child decides to stay with a parent on, for example, a Wednesday, the child must stay with that parent until the end of the parenting week on the following Sunday. Further, if it is, for example, Mother's week and she is not available to care for the children for any reason, Mother cannot simply tell Father to keep the children another week. It is her week. Father is not the default if Mother is unavailable to exercise parenting time on her week and vice versa.

The Court recognizes that this is a harsh result, but feels such is necessary and in the children's best interest given the parties' actions over the past decade and the lack of success of previous Parenting Plans which allowed for more leeway. The Court finds it absolutely necessary to make this Parenting Plan as "black and white" as possible and has spent considerable time balancing the equities involved.

or amend the sua sponte order to correct a misstatement.

The trial court then entered an amended order on Father's Rule 69.07 motion, in which it "enter[ed] an Order of Sale instructing the Shelby County Sheriff to sell Mother's interest in the real property [at issue]." Mother attempted various efforts to avoid the sale of the property, all of which were denied. Eventually, on November 6, 2019, Mother satisfied the August 3, 2016 judgment, and the Sheriff's sale was cancelled.

In the meantime, on July 2, 2018, the trial court entered an amended sua sponte order striking the August 2016 parenting plan and establishing a new parenting plan. The amended order appointed a guardian ad litem for the children and gave specific directions as to the obligations of the guardian ad litem in this matter.[6] Mother thereafter filed a second notice of appeal. Father filed a motion to alter or amend the amended sua sponte order, which was eventually denied by the trial court.

The parties continued to engage in various disputes in the trial court, including, but not limited to concerning the guardian ad litem and her fees, additional medical bills for the children, collection on the August 3, 2016 judgment, and the record in this appeal.[7] Eventually, Chancellor Kyle recused himself, and this matter was transferred to Shelby County Circuit Court, Judge Gina Higgins presiding.

Most recently, on November 4, 2021, Father filed a motion with this Court to consider post-judgment facts concerning a dependency and neglect action that had been filed in the Shelby County Juvenile Court ("the juvenile court") concerning the parties' minor children. In his motion, Father alleged that the juvenile court found that Mother had committed severe abuse against one of the parties' children. The juvenile court further found that both children were dependent and neglected. As such, the juvenile court awarded Father legal custody and permanent guardianship of the children, with Mother awarded visitation with the children. The juvenile court's August 10, 2021 order was attached as an exhibit to Father's motion. On December 22, 2021, we granted Father's motion to consider post-judgment facts and the August 10, 2021 juvenile court order was included as a supplement to the appellate record.

## II. ISSUES PRESENTED

---

[6] Four different guardian ad litems were appointed in this case. The guardians ad litem filed many motions in the trial court, including for their duties to be clarified, to be relieved of the appointment, and for the award of fees. The second guardian ad litem also filed a motion with this Court to strike Mother's arguments concerning the guardian ad litem in her appellate brief on the ground that she had not been properly served with Mother's brief. Because we vacate the trial court's order appointing the guardian ad litem and do not disturb the award of fees to the second guardian ad litem, *infra*, the motion is denied as moot.

[7] The record contains nine technical records representing the parties' filings after Mother filed her two notices of appeal in the instant appeal.

Mother raises the following issues for review, which are taken from her amended brief:

1. Whether the trial court erred in its reduction of the designation of record for Appeal.
2. Whether the trial court erred in its assessment of attorney's fees, discretionary costs, court costs, medical bills and other costs and fees and whether Appellant should be awarded said fees and costs.
3. Whether the trial court erred in modifying the parties Permanent Parenting Plan and failure to include an explanation of his reasoning as a basis for its decision in altering the Parenting Plan and failure to cite reasonings for a threshold finding that a material and substantial change had occurred to justify Parenting Plan modifications and to consider the statutory best interest factors and in ordering a reduction of Appellant's parenting time.[8]
4. Whether the trial court erred by not proving "ability to pay" prior to assessing any and all costs and fees against Appellant.
5. Whether the trial court erred by not requiring the parties to attend Mediation.
6. Whether the trial court erred by entering its orders from "oral motions" and entering its Injunctions against Appellant and entering Injunctions that were not substantiated and/or Notice was not given.
7. Whether the trial court erred by ordering Mother to pay medical bills prior to insurance.
8. Whether the trial court erred in denying Mother's requests for relief from final judgment and Whether the trial court erred in its Order Granting in Part and denying in part Father's Rule 69.07 Motion for Order of Sale.
9. Whether the trial court erred in its Sua Sponte orders.
10. Whether the trial court erred in its assessment of all June 8, 2018 monetary awards against Mother.
11. Whether the trial court erred in its appointment of a Guardian ad Litem in violation of Rule 40A.

In the posture of appellee, Father argues that Mother's brief fails to comply with procedural requirements applicable in this Court and that he should be awarded attorney's fees incurred on appeal.

### III. STANDARD OF REVIEW

Under Rule 13(d) of the Tennessee Rules of Appellate Procedure, "review of findings of fact by the trial court in civil actions shall be de novo upon the record of the

---

[8] In her reply brief, Mother states that she is removing issue 3 and will address it under issue 9. We agree that for clarity these issues should be addressed together and do so below.

trial court, accompanied by a presumption of the correctness of the finding, unless the preponderance of the evidence is otherwise." The trial court's legal conclusions are reviewed de novo with no presumption of correctness. ***Eberbach v. Eberbach***, 535 S.W.3d 467, 473 (Tenn. 2017).

## IV. ANALYSIS

As an initial matter, we note that Mother is self-represented in this appeal, as she was for the majority of the trial court proceedings. "While entitled to fair and equal treatment before the courts, a pro se litigant is still required to comply with substantive and procedural law as do parties represented by counsel." ***Gilliam v. Gilliam***, No. M2007-02507-COA-R3-CV, 2008 WL 4922512, at *3 (Tenn. Ct. App. Nov. 13, 2008) (citing ***Hessmer v. Hessmer***, 138 S.W.3d 901, 903 (Tenn. Ct. App. 2003)). As explained by this Court, "[t]he courts should take into account that many pro se litigants have no legal training and little familiarity with the judicial system. However, the courts must also be mindful of the boundary between fairness to a pro se litigant and unfairness to the pro se litigant's adversary." ***Jackson v. Lanphere***, No. M2010-01401-COA-R3-CV, 2011 WL 3566978, at *3 (Tenn. Ct. App. Aug. 12, 2011) (quoting ***Hessmer***, 138 S.W.3d at 903 (internal citations omitted)). "[T]he courts must not excuse pro se litigants from complying with the same substantive and procedural rules that represented parties are expected to observe." ***Hessmer***, 138 S.W.3d at 903.

Among the procedural rules that are applicable in this appeal are Rule 27 of the Tennessee Rules of Appellate Procedure and Rule 6 of the Rules of the Court of Appeals of Tennessee. Rule 27 provides various requirements for briefs filed by appellants to this Court. Among the requirements are a statement of the issues presented for review and an argument that sets forth "the contentions of the appellant with respect to the issues presented, and the reasons therefor, including the reasons why the contentions require appellate relief, with citations to the authorities and appropriate references to the record[.]" Tenn. R. App. P. 27(a)(7). Similarly, Rule 6 provides that written argument on each issue "shall" contain the following:

> (1) A statement by the appellant of the alleged erroneous action of the trial court which raises the issue and a statement by the appellee of any action of the trial court which is relied upon to correct the alleged error, with citation to the record where the erroneous or corrective action is recorded.
> (2) A statement showing how such alleged error was seasonably called to the attention of the trial judge with citation to that part of the record where appellant's challenge of the alleged error is recorded.
> (3) A statement reciting wherein appellant was prejudiced by such alleged error, with citations to the record showing where the resultant prejudice is recorded.
> (4) A statement of each determinative fact relied upon with citation to the

record where evidence of each such fact may be found.

The requirements of Rules 27 and 6 are mandatory. *See, e.g., **State v. Odom***, 137 S.W.3d 572, 604 (Tenn. 2004) ("The use of the word 'shall' is generally mandatory[.]"); ***Loden v. Schmidt***, No. M2014-01284-COA-R3-CV, 2015 WL 1881240, at \*4 (Tenn. Ct. App. Apr. 24, 2015) ("Rule 27 of the Tennessee Rules of Appellate Procedure contains the mandatory contents for an appellate brief."). *But see* Tenn. R. App. P. 2 (noting that many of the rules of appellate procedure may be excused for good cause).

Father argues that Mother's brief fails to comply with Rule 27. In a sense, we agree. Importantly, Mother's brief contains argument in the body of the brief that does not correspond with the issues that she has designated. As previously discussed, Rule 27 mandates that the appellant set forth his or her issues for review. And Rule 13(b) of the Tennessee Rules of Appellate Procedure states that appellate review is generally limited to the issues that have been presented for review. As a result, an issue is generally waived when it is argued in the body of the brief, but not designated as an issue on appeal. *See, e.g.*, ***State v. Freeman***, 402 S.W.3d 643, 653 (Tenn. Ct. App. Oct. 16, 2012) ("Generally, an issue argued in the body of the brief, but not designated as an issue will be considered waived"); ***Bunch v. Bunch***, 281 S.W.3d 406, 410 (Tenn. Ct. App. 2008); ***Childress v. Union Realty Co.***, 97 S.W.3d 573, 578 (Tenn. Ct. App. 2002).

Waiver may also occur when an issue is designated, but not addressed or only minimally developed in the argument section of the appellant's brief. *See **Sneed v. Bd. of Prof'l Responsibility of Sup. Ct.***, 301 S.W.3d 603, 615 (Tenn. 2010) ("It is not the role of the courts, trial or appellate, to research or construct a litigant's case or arguments for him or her, and where a party fails to develop an argument in support of his or her contention or merely constructs a skeletal argument, the issue is waived."); ***Childress***, 97 S.W.3d at 578 ("[W]hen a party raises an issue in its brief, but fails to address it in the argument section of the brief, we consider the issue to be waived."). Indeed, this court "has repeatedly held that a party's failure to cite authority for its arguments or to argue the issues in the body of its brief constitute a waiver on appeal." ***Forbess v. Forbess***, 370 S.W.3d 347, 355 (Tenn. Ct. App. 2011) (citing ***Newcomb v. Kohler Co.***, 222 S.W.3d 368, 401 (Tenn. Ct. App. 2006) (failure "to cite to any authority or to construct an argument regarding [a] position on appeal" constitutes a waiver of the issue); ***Bean v. Bean***, 40 S.W.3d 52, 55-56 (Tenn. Ct. App. 2000) ("Courts have routinely held that the failure to make appropriate references to the record and to cite relevant authority in the argument section of the brief as required by Rule 27(a)(7) constitutes a waiver of the issue.")). As will be discussed *infra*, many of Mother's arguments in her amended brief are no more than minimally developed. And while Mother does cite additional legal authority in her reply brief, a reply brief is not a vehicle for correcting the deficiencies in an initial brief or raising new arguments. ***Augustin v. Bradley Cty. Sheriff's Office***, 598 S.W.3d 220, 227 (Tenn. Ct. App. 2019); *see also **Goetz v. Autin***, No. W2015-00063-COA-R3-CV, 2016 WL 537818, at \*11 n.8 (Tenn. Ct. App. Feb. 10, 2016) ("[A]llowing an appellant

- 8 -

to correct the deficiencies in his argument from his initial brief in his reply brief after the appellee has filed a responsive brief would result in a fundamental unfairness to the appellee, as the appellee may not respond to a reply brief." (internal quotation marks and citation omitted)).

Finally, we note that "'[j]udges are not like pigs, hunting for truffles buried in briefs.'" ***Coleman v. Coleman***, No. W2011-00585-COA-R3-CV, 2015 WL 479830, at *9 (Tenn. Ct. App. Feb. 4, 2015) (quoting ***U.S. v. Dunkel***, 927 F.2d 955, 956 (7th Cir. 1991)). In this case, while Mother has chosen to divide her amended brief into headings, she often raises arguments under those headings that are not responsive to the heading or to the issues as designated. We decline to engage in an expedition through Mother's amended brief to attempt to decipher where her arguments may be found. *Cf.* ***Killian v. Moore***, No. M2020-01283-COA-R3-CV, 2022 WL 457395, at *4 (Tenn. Ct. App. Feb. 15, 2022) (waiving much of a party's argument where the party "weaves a tangled web of arguments that is difficult to follow and devotes ample portions of her brief to attacking Father, the trial court, the guardian ad litem, and the psychologists on whose reports the trial court relied. However, she does not support her vitriol with citation to the record where proof may be found to validate her perception of what transpired."). We keep these principles in mind as we consider the issues presented by Mother.

## A.

Mother first argues that the trial court erred in limiting the record on appeal.[9] According to Mother, "without the record going back to 2013, the Court of Appeals is unable to determine if proper expenses, costs and fees were awarded, and if Mother should have been awarded same." Father responds that the record prior to 2016 is unnecessary because all of the proceedings prior to that date are final and not subject to review.

Questions regarding the contents of the record on appeal are governed by Rule 24 of the Tennessee Rules of Appellate Procedure. Under Rule 24(e),

> If any matter properly includable is omitted from the record, is improperly included, or is misstated therein, the record may be corrected or modified to conform to the truth. Any differences regarding whether the record accurately discloses what occurred in the trial court shall be submitted to and settled by the trial court regardless of whether the record has been transmitted to the appellate court. *Absent extraordinary circumstances, the determination of the trial court is conclusive.* If necessary, the appellate or trial court may direct that a supplemental record be certified and transmitted.

---

[9] The record on appeal is already voluminous, with nineteen technical records spanning from August 2016 to January 2020, twenty-three transcripts, and thirteen depositions.

(Emphasis added).

Here, the record that has been transmitted to us reveals that this case was the subject of at least one prior appeal filed on September 1, 2016. This notice of appeal specifically stated that it involved the trial court's rulings of August 2, 3, and 9, 2016. In this appeal, it appears that Mother primarily takes issue with the August 3, 2016 order awarding Father considerable attorney's fees. There can be no dispute that this appeal was voluntarily dismissed by Mother and a mandate was issued on March 6, 2017.

We therefore agree with Father that the dispositive issue as to whether Mother is entitled to appeal the August 2016 orders—and therefore whether the record should include documents that led up to those orders—is whether those orders are res judicata. An order is res judicata if the following elements are met: (1) the underlying judgment was rendered by a court of competent jurisdiction; (2) the same parties were involved in both suits; (3) the same cause of action was involved in both suits; and (4) the underlying judgment was on the merits. ***Acuity v. McGhee Eng'g, Inc.***, 297 S.W.3d 718, 735 (Tenn. Ct. App. 2008).

There can be no dispute that elements 1, 2, and 3 were met in this case. The only question then is whether the underlying judgment was a final adjudication on the merits. The record as it exists on appeal indicates that the judgment was final and on the merits. For one, the order that Mother is actually taking issue with, the August 3, 2016 order on attorney's fees, is designated as final pursuant to Rule 54.02 of the Tennessee Rules of Civil Procedure. An order that is properly designated as final under Rule 54.02 is generally held to be a final adjudication on the merits for purposes of res judicata. ***Norris v. E. Tennessee Children's Hosp.***, 195 S.W.3d 78, 82 (Tenn. Ct. App. 2005). Indeed, Mother filed a motion expressly seeking relief from the August 3, 2016 order in in which she expressly characterized that order as a "final judgment." And Mother has offered no argument of any kind in her brief that the trial court was wrong to designate this order as final under Rule 54.02 or even that any other matters were pending in the trial court at this juncture. Likewise, while she argues that additional portions of the record are required to review the underlying merits of the August 3, 2016 order, she does not in any way assert that additional documents would demonstrate that this order was not a final adjudication on the merits for purposes of res judicata.

Thus, we must conclude that Father has met his burden to show that the August 6, 2016 order was a final order subject to appeal. In voluntarily dismissing her appeal of this order, the trial court's judgment was affirmed and made final. *See generally **Brown v. Brown***, No. M2012-02084-COA-R3-CV, 2014 WL 1017509, at *7 (Tenn. Ct. App. Mar. 13, 2014) ("[A]n appellant seeking to voluntarily dismiss its appeal is not entitled to a dismissal without prejudice. When an appellant voluntarily dismisses its appeal, the appellate court, at its option, may either affirm the lower court's judgment or simply dismiss the appeal, thereby leaving the lower court's judgment in place and returning the parties to where they were before the appeal was filed.") (quotation marks and citations

omitted).  As such, Mother is simply not entitled to appeal that order in this appeal due to the application of res judicata.[10]

We do note, however, that Mother did file a motion under Rule 60.02 of the Tennessee Rules of Civil Procedure seeking relief from this judgment. On appeal, Mother raised an issue asserting that the trial court erred in denying this motion.[11] According to Father, however, the trial court correctly denied the motion because it was untimely. We agree.

Rule 60.02 of the Tennessee Rules of Appellate Procedure provides in relevant part as follows:

> On motion and upon such terms as are just, the court may relieve a party or the party's legal representative from a final judgment, order or proceeding for the following reasons: (1) mistake, inadvertence, surprise or excusable neglect; (2) fraud (whether heretofore denominated intrinsic or extrinsic), misrepresentation, or other misconduct of an adverse party; (3) the judgment is void; (4) the judgment has been satisfied, released or discharged, or a prior judgment upon which it is based has been reversed or otherwise vacated, or it is no longer equitable that a judgment should have prospective application; or (5) any other reason justifying relief from the operation of the judgment. The motion shall be made within a reasonable time, and for reasons (1) and (2) not more than one year after the judgment, order or proceeding was entered or taken. A motion under this Rule 60.02 does not affect the finality of a judgment or suspend its operation, but the court may enter an order suspending the operation of the judgment upon such terms as to bond and notice as to it shall seem proper pending the hearing of such motion.

In Mother's amended brief, she asserts that she should be entitled to relief from the trial court's order "on attorney's fees based on the mistake, inadvertence or excusable neglect in the miscalculation of attorney's fees and that the miscalculation of fees is a reason justifying relief from the judgment[.]"[12] But the language of Rule 60.02 makes clear that a motion raising mistake of this type must be filed at least within one year of the order

---

[10] Arguably, the August 3, 2016 order awarding attorney's fees is law of the case, rather than res judicata. *See* **Brown**, 2014 WL 1017509, at *8 n.8 (noting that res judicata "is 'closely related' to the law of the case doctrine" and when a litigant voluntarily dismisses his appeal, resulting in affirmance of the trial court's ruling, a later attack on that ruling is barred "under either doctrine").

[11] Mother expressly waives this issue in her reply brief. However, in an abundance of caution, we will address this issue as it is inextricably connected to other issues raised by Mother.

[12] Mother also mentioned Rule 60.01 of the Tennessee Rules of Civil Procedure as a basis for her request for relief. Rule 60.01 involves clerical mistakes. Mother has cited nothing that would lead this Court to conclude that her attempt to avoid the attorney fee award was merely an attempt to correct a clerical error under Rule 60.01.

challenged. *See* Tenn. R. Civ. P. 60.02 (noting that this type of claim falls under section (1) and that challenges under section (1) should be made within a reasonable time not more than a year after the judgment). The challenged order was filed on August 3, 2016. Mother's motion for relief was filed more than a year later, on August 23, 2017. The fact that Mother initially attempted to appeal the August 3, 2016 order has no effect on this timeline. *See* ***Spence v. Allstate Insurance Co.***, 883 S.W.2d 586 (Tenn. 1994)) ("The pendency of an appeal does not affect the requirement that a Rule 60.02 motion be filed within one year after the judgment from which relief is sought, since the party seeking relief can apply to the appellate court for an order of remand."). Because Mother's motion under Rule 60.02 was untimely, the trial court was correct to deny it. *See* ***Furlough v. Spherion Atl. Workforce, LLC***, 397 S.W.3d 114, 131 (Tenn. 2013) (concluding that "relief [wa]s not available under Rule 60.02(1)" because the petition seeking relief "was not timely filed").

Thus, Mother is simply not permitted to raise the correctness of the trial court's August 3, 2016 order awarding Father attorney's fees in this appeal. *Cf.* ***Hohenberg v. Bankers Tr. Co.***, 1993 WL 327832, at *4 (Tenn. Ct. App. Aug. 20, 1993) ("*Res judicata* is based on the public policy favoring finality in litigation and does not depend upon correctness or fairness, as long as the underlying judgment is valid."). Because Mother cannot challenge the August 3, 2016 order, we agree with the trial court that pleadings and documents filed prior to 2016 are not relevant to this appeal. Thus, Mother has failed to present "extraordinary circumstances" that would justify overturning the trial court's decision regarding the contents of the record. Tenn. R. App. P. 24(e).

## B.

Although the bulk of the fees awarded against Mother are res judicata, the trial court did continue to award attorney's fees, costs, and expenses to Father following the dismissal of the second appeal. Indeed, it appears Mother was ordered to pay attorney's fees relative to Father's request for injunctive relief, attorney's fees relating to a discovery issue under Rule 37.03 of the Tennessee Rules of Civil Procedure, and discretionary costs under Rule 54.04 of the Tennessee Rules of Civil Procedure.[13] However, the portion of Mother's amended brief that should be devoted to her second issue is devoid of argument, properly supported or otherwise. Instead, it appears that Mother combines her arguments concerning the fees with one of her arguments concerning the parenting plan, jumping back and forth

---

[13] Mother was also later ordered to pay the majority of the guardian ad litem's fees. However, Mother did not designate guardian ad litem fees as an issue in her amended brief, nor does she address the fees in the portion of her amended brief devoted to the appointment of the guardian ad litem. Instead, Mother did not specifically challenge the award of these fees until her reply brief. *See* ***Owens v. Owens***, 241 S.W.3d 478, 499 (Tenn. Ct. App. 2007) (citing Tenn. R. App. P. 27(c)) ("A reply brief is a response to the arguments of the appellee. It is not a vehicle for raising new issues."). We therefore will not consider this issue.

between the two issues, despite these issues being entirely distinct.[14] And much of this portion of Mother's brief continues to address the issue of the record on appeal. Simply put, this portion of Mother's brief does not contain any cogent legal argument, properly supported by either proof or legal authority, to show that the trial court erred in awarding any fees following the dismissal of the second appeal.

Still, Mother attempts to raise this issue a second time in her brief, under issue 10. Therein, Mother does contest the attorney's fees awarded relative to the injunctive relief and the discovery issue, as well as the award of discretionary costs. Because Mother once again cites no legal authority in support of her argument, we conclude that she has waived her arguments as to the fees awarded relative to the discovery issue. We conclude, however, that Mother has raised a meritorious argument as to the award of discretionary costs.

Rule 54.04(2) of the Tennessee Rules of Civil Procedure governs the award of discretionary costs. Because costs under Rule 54.04(2) are discretionary, the trial court's decision is reviewed for an abuse of that discretion. *St. John-Parker v. Parker*, 638 S.W.3d 624, 650 (Tenn. Ct. App. 2020). "A court abuses its discretion when it causes an injustice to the party challenging the decision by (1) applying an incorrect legal standard, (2) reaching an illogical or unreasonable decision, or (3) basing its decision on a clearly erroneous assessment of the evidence." *Fisher v. Hargett*, 604 S.W.3d 381, 395 (Tenn. 2020).

Here, the trial court awarded Father $3,793.13 in discretionary costs in connection with his contempt petition against Mother.[15] But as Mother points out, the trial court denied every claim in Father's petition, save a less than $400.00 medical charge. The trial court's order provides no reasoning for its decision to award Father the whole of his costs despite the fact that Father did not prevail on the bulk of his contempt charges. In particular, the

---

[14] Specifically, this portion of Mother's brief is as follows:

> II.      Whether the trial court erred in its assessment of attorneys fees, discretionary
>
> costs, court costs, medical bills and other costs and fees and whether
>
> Appellant should be awarded said fees and costs, and
>
> III.      Whether the trial court erred in modifying the parties' Permanent Parenting
>
> Plan and failure to include an explanation of his reasoning as a basis for its
>
> 15

The remainder of Mother's third issue is on the next page of Mother's amended brief.

[15] Although the trial court's order states that it relates to the contempt petition, a review of Father's motion indicates that he was also seeking fees in connection with other matters, such as one-half of transcription services for other motion hearings in which he prevailed.

- 13 -

discretionary costs sought by Father include $2,868.13 in expert witness fees related to issues that Father did not prevail upon in the contempt trial. Rather than rely on his unsuccessful contempt petition, Father cited the fact that the trial court sua sponte ordered a new parenting plan be implemented. But as will be discussed *infra*, the trial court was wrong to take this action. As such, it appears unreasonable to force Mother to pay expert fees that supported the portion of Father's contempt petition that was unsuccessful. We therefore reverse the award of $2,868.13 in discretionary costs. The remaining $925.00 in discretionary costs is affirmed. We address the fees awarded with regard to the injunctive relief, *infra*. All other fees and costs awarded by the trial court are affirmed.

## C.

We next address Mother's issues regarding the parenting plan entered sua sponte by the trial court.[16] Here, following contentious proceedings, the trial court sua sponte ordered that the parties abide by a new parenting plan, which it then amended to require extensive supervision by a guardian ad litem. As we perceive it, Mother's argument on appeal is three-fold: (1) that the order putting in place the new parenting plan does not contain necessary findings of fact and conclusions of law; (2) that the trial court was not permitted to order a new parenting plan in the absence of a request by either party; and (3) that the parenting plan's guardian ad litem requirements violate Rule 40A of the Rules of the Tennessee Supreme Court.

In response, Father argues that any questions concerning the parenting plan were rendered moot when the juvenile court found the children dependent and neglected and assumed jurisdiction over the issues of child care. Generally, an issue is moot "if an event occurring after the commencement of the case extinguishes the legal controversy attached to the issue, or otherwise prevents the prevailing party from receiving meaningful relief in the event of a favorable judgment[.]" *City of Memphis v. Hargett*, 414 S.W.3d 88, 96 (Tenn. 2013) (internal citation omitted) (citing *Lufkin v. Bd. of Prof'l Responsibility*, 336 S.W.3d 223, 226 (Tenn. 2011); *Knott v. Stewart Cnty.*, 185 Tenn. 623, 207 S.W.2d 337, 338 (1948); *Cnty. of Shelby v. McWherter*, 936 S.W.2d 923, 931 (Tenn. Ct. App. 1996)). The Tennessee Supreme Court has, however, recognized a handful of exceptions, including that the issue is capable of repetition but evading judicial review. *Id.* (citing *Lufkin*, 336 S.W.3d at 226 n.5).

We agree with Father that Mother is not currently entitled to meaningful relief even if she was to prevail on her issues relating to the parenting plan. Here, the juvenile court has exclusive jurisdiction over the children unless and until an event terminates that

---

[16] Mother also raises a September 26, 2017 order in which the trial court sua sponte ordered the parties to mediation concerning Father's fee claims. Mother provides no legal argument that this order was in error, nor does she cite any legal authority in support of this assertion of error. Any allegation of error as to this order is therefore waived.

jurisdiction under Tennessee Code Ann. § 37-1-103. As the Tennessee Supreme Court has explained,

> Tennessee Code Annotated section 37-1-103(c) provides that when a juvenile court acquires jurisdiction of a dependency and neglect petition, "such jurisdiction shall continue until the case has been dismissed, or until the custody determination is transferred to another juvenile, circuit, chancery or general sessions court exercising domestic relations jurisdiction. . . ."

*Toms v. Toms*, 98 S.W.3d 140, 143–44 (Tenn. 2003). Thus, the juvenile court is the sole court that may adjudicate parenting issues related to these children at this time.

We note, however, that Mother asserted at oral argument, without apparent dispute, that she has appealed the dependency and neglect order for de novo review.[17] If the reviewing court does not sustain the allegations of dependency and neglect, it would be required to dismiss the case, thus extinguishing the juvenile court's exclusive jurisdiction. Should that event occur, it is possible that Father may seek to enforce the parenting plan at issue on appeal. But if we decline to review that parenting plan in this appeal, it is not clear that Mother would have any right to appeal that order in a future appeal. *See* Tenn. R. App. P. 4(a) (indicating that, in a civil action, a notice of appeal filed thirty days after the final order is a jurisdictional prerequisite to review). Under these circumstances, we exercise our discretion to consider the propriety of the trial court's sua sponte parenting plan so as not to deprive Mother of her right to appeal to this Court. *See* Tenn. R. App. P. 3(a) (giving litigants appeals as of right of final judgments).

We therefore proceed to the merits of Mother's arguments. Following our review, we conclude that Mother's second argument—that the trial court erred in imposing a new parenting plan sua sponte—is dispositive of this issue. In general, an order is void where the trial court "ruled on an issue wholly outside of the pleadings[.]" *Lovlace v. Copley*, 418 S.W.3d 1, 19 (Tenn. 2013). One exception to this rule is that an issue may be tried by express or implied consent. *See* Tenn. R. Civ. P. 15.02 ("When issues not raised by the pleadings are tried by express or implied consent of the parties, they shall be treated in all respects as if they had been raised in the pleadings."). In this case, Father does not dispute that no pleading was filed asking for a modification of the parenting plan. Nor does he in any way assert that this issue was tried by consent. Indeed, the fact that the trial court chose to characterize its order as sua sponte lends credence to Mother's argument that she did not have proper notice that modification of the parenting plan was at issue.[18]

---

[17] The juvenile court order was issued by a magistrate. As such, Mother would generally be entitled to de novo rehearing before the juvenile court judge. *See generally* Tenn. Code Ann. § 37-1-107 (governing hearings and appeals involving judicial magistrates). The order, however, states that should Mother wish to appeal, her appeal would be de novo to circuit court. The forum for Mother's appeal from the dependency and neglect order is not relevant to our analysis.

[18] The record also demonstrates that Mother filed a response to Father's motion to alter or amend

This Court has held that a parenting plan may not be modified under similar circumstances. In *Parris v. Parris*, No. M2006-02068-COA-R3-CV, 2007 WL 2713723 (Tenn. Ct. App. Sept. 18, 2007), the trial court did not modify the parties' parenting plan, which the father argued was an error on appeal. We disagreed, explaining:

> Husband did not request at the hearing that the court modify the visitation schedule. Nor can we say that the issue was tried by implied consent. *See generally Zumstein v. Smith,* No. 03A01-9409-CH-00346, 1995 WL 113472, at *3 (Tenn. Ct. App. Mar.16, 1995). Apparently, Husband is arguing that the court should have acted sua sponte and modified the visitation schedule. In *Fenley v. Fenley,* No. 03A01-9604-CH-00121, 1996 WL 469683, at *3 (Tenn. Ct. App. Aug. 19, 1996), we held that the trial court erred in modifying *sua sponte* the visitation schedule at a modification of child custody hearing. In *Fenley,* the father's petition alleged that a material change in circumstance justified change of custody. *Id .* at *1. It did not, however, allege alternatively that the court should modify the visitation arrangement. *Id.* As we pointed out in that case, a judgment beyond the pleadings is invalid. *Id.* at *3 (citations omitted). Thus, the court was correct in not addressing issues pertaining to modification of visitation. In sum, we find that the court's findings are more than supported by the evidence in the record.

*Parris*, 2007 WL 2713723, at *9. Here, neither party requested modification of the parenting plan. The trial court therefore erred in addressing an issue that was not raised by the parties. The sua sponte parenting plan entered on March 20, 2018, and amended on July 2, 2018, is therefore vacated.[19]

### D.

Mother also designated an issue regarding the trial court's decision to grant "oral motions" and in entering injunctions against Appellant. Respectfully, Mother's argument as to this issue is difficult to understand. For one, Mother does not reference a single oral

---

the sua sponte order in which she objected to the parenting plan imposed by the sua sponte order.

[19] Mother's remaining issues related to the parenting plan are pretermitted. We note, however, the concerns expressed at times by Mother, Father, and even the guardian ad litem, that the scope of the guardian ad litem duties imposed in the amended sua sponte order violate Rule 40A of the Rules of the Tennessee Supreme Court and open the parties up to incredible fees. Should the trial court reacquire jurisdiction in this case—by, for example, dismissal of the dependency and neglect action—and either party files a proper request for modification of the parenting plan, we encourage the trial court to review the requirements related to findings of fact and conclusions of law that would be applicable to its decision, as well as the requirements of Rule 40A of the Rules of Tennessee Supreme Court relating to the duties of guardians ad litem.

motion made by Father that was granted by the trial court in this portion of her brief. Instead, it appears that Mother is referring to some of Father's written motions as "oral motions" because she asserts she did not get timely notice of such motions. The first involves Father's request for injunctive relief. A timeline of events is therefore helpful. The genesis of this issue appears to be Father's filing of a Second Petition for Writ of Scire Facias and Citation for Civil Contempt and Request For Injunctive Relief on November 8, 2017. A hearing was held on the same day in which both parties appeared, Mother accepted service on the petition in open court, the trial court granted Father's request, and an evidentiary hearing on the request for injunctive relief was set for December 4, 2017. Mistakenly, the fiat was issued as a restraining order, while the trial court apparently intended to grant a temporary injunction. On November 16, 2017, Father filed an amended petition; the allegations regarding the injunction were identical to his earlier filing.

On November 16, 2017, the trial court's law clerk sent the parties an email asking what was set to be heard on November 20, 2017. Counsel for Father indicated that the issue of the permanent injunction would be heard. Mother responded that she was not aware of that and asked about the status of the temporary injunction/restraining order. The trial court entered an order on November 17, 2017, voiding the restraining order on the basis that the trial court intended to grant a temporary injunction. An order granting a temporary injunction was entered in its stead that temporarily restrained the parties from discussing the litigation or parenting issues with the minor children and from "discussing any past conduct of the other parent in the presence of the minor children" and restrained Mother from interfering in Father's parenting time. This temporary injunction was set to expire on November 20, 2017.

The hearing occurred on November 20, 2017. No transcript is included in the record on appeal from this hearing. According to the trial court's order, entered on December 1, 2017, Mother was present, but made the decision to "present no proof at the hearing." Based on Father's testimony, the trial court found that Mother had interfered with Father's parenting time and ordered Mother to, inter alia, desist from interfering with Father's parenting time, making disparaging remarks about Father or his family around the children, and for Father to begin family counseling with the children, with Mother to join if recommended by the therapist. Father was also awarded his attorney's fees.

Thus, it is clear that Father's request for injunctive relief was based on written motions, rather than oral motions. We agree with Mother, however, that the way in which the trial court awarded Father injunctive relief was fatally flawed. Rule 65.01 authorizes three forms of injunctive relief: (1) a restraining order, (2) a temporary injunction, or (3) a permanent injunction in a final judgment. "A restraining order shall only restrict the doing of an act. An injunction may restrict or mandatorily direct the doing of an act." Tenn. R. Civ. P. 65.01. All three types of relief must be "specific in terms and shall describe in reasonable detail, and not by reference to the complaint or other document, the act restrained or enjoined[.]" Tenn. R. Civ. P. 65.02(2).

The first type of relief, the restraining order, may be obtained without notice in some circumstances:

> The court may issue a temporary restraining order without written or oral notice to the adverse party or its attorney only if:
>
> (A) specific facts in an affidavit or a verified complaint clearly show that immediate and irreparable injury, loss, or damage will result to the applicant before the adverse party can be heard in opposition; and
>
> (B) the applicant's attorney (or pro se applicant) certifies in writing efforts made to give notice and the reasons why it should not be required.

Tenn. R. Civ. P. 65.03(1). The restraining order is then to be served in the manner of a summons. Tenn. R. Civ. P. 65.03(4). The "restraining order becomes effective and binding on the party to be restrained at the time of service or when the party is informed of the order, whichever is earlier." Tenn. R. Civ. P. 65.03(5). And the durations of a restraining order granted without notice is limited:

> Every temporary restraining order granted without notice shall expire by its terms within such time after entry, not to exceed fifteen days, as the Court fixes, unless within the time so fixed the order, for good cause shown, is extended for a like period, or unless the party against whom the order is directed consents that it may be extended for a longer period. The reasons for the extension shall be entered of record.

A temporary injunction, however, cannot be issued without notice to the adverse party. Tenn. R. Civ. P. 65.04(1). Such an injunction is authorized when, *inter alia*, "it is clearly shown by verified complaint, affidavit or other evidence that the movant's rights are being or will be violated by an adverse party and the movant will suffer immediate and irreparable injury, loss or damage pending a final judgment in the action[.]" Tenn. R. Civ. P. 65.04(2). Moreover, "[i]n granting, denying or modifying a temporary injunction, the court shall set forth findings of fact and conclusions of law which constitute the grounds of its action as required by Rule 52.01." Tenn. R. Civ. P. 65.04(6). In general, neither a restraining order nor a temporary injunction may be granted unless the applicant gives a proper bond. *See generally* Tenn. R. Civ. P. 65.05. Finally, the court may enter a permanent injunction following as a final adjudication of the request for injunctive relief. Tenn. R. Civ. P. 65.01.

Mother has pointed out a number of flaws in the trial court's grant of injunctive relief to Father in this case. First, she notes that Father was never required to give a bond as required by Rule 65.05 of the Tennessee Rules of Civil Procedure. We note, however, that Rule 65.07 of the Tennessee Rules of Civil Procedure specifically provides for

- 18 -

exceptions to the injunction rules set forth in Rule 65:

> In domestic relations cases, restraining orders or injunctions may be issued upon such terms and conditions and remain in force for such time as shall seem just and proper to the judge to whom application therefor is made, and the provisions of this Rule shall be followed only insofar as deemed appropriate by such judge.

Mother offers no argument that this provision should not be interpreted to allow the trial court to order injunctive relief in this domestic relations case in the absence of a bond. So we conclude that Mother has not shown that the trial court erred in granting Father relief in the absence of a bond.

But Mother also argues that the trial court did not comply with Rule 65.04 of the Tennessee Rules of Civil Procedure requiring the trial court to make findings of fact and conclusions of law to support the grant or extension of a temporary injunction. We agree with Mother that the trial court's orders are deficient in this respect. This Court has previously held that Rule 65.07 does "not entirely 'dispens[e] with the requirement that the trial court enter reasons or findings of record . . . when granting a temporary injunction.'" ***Milton v. Harness***, No. E2017-00092-COA-R10-CV, 2017 WL 837704, at *4 (Tenn. Ct. App. Mar. 3, 2017) (quoting ***Smith v. Smith***, No. 01A01–9511–CH–00536, 1996 WL 526921, * 3 (Tenn. Ct. App. Sept. 18, 1996)). The trial court's order granting the temporary injunction contains not a single finding of fact or conclusion of law in support. Clearly, this does not comply with either the letter or the spirit of Rule 65.04.

It is true that the parties were only operating under the temporary injunction for a short period of time. But the trial court's permanent injunction is little better at offering this Court illumination as to its reasoning. Specifically, the order contains only the following factual findings as to the proof presented:

> 1. Father has carried his burden by clear and convincing evidence that Mother has done everything in her power to alienate the children from Father.
>
> 2. Father has produced clear and convincing evidence that Mother is making disparaging remarks about Father to the minor children.
>
> 3. The evidence shows that Mother has done everything she can think of to interfere with the children's relationship with their Father.

The order then proceeds to warn Mother of the consequences of her behavior and orders her to desist from certain actions.

The Tennessee Supreme Court has previously considered how specific an order must be to comply with Rule 52.01:

There is no bright-line test by which to assess the sufficiency of factual findings, but the findings of fact must include as much of the subsidiary facts as is necessary to disclose to the reviewing court the steps by which the trial court reached its ultimate conclusion on each factual issue. Courts need not make findings on stipulated or undisputed facts, unless conflicting inferences can be drawn from undisputed facts.

*Lovlace v. Copley*, 418 S.W.3d 1, 35 (Tenn. 2013) (internal quotation marks and citations omitted). Respectfully, neither the order on the temporary injunction, nor the permanent injunction are sufficient to meet this threshold. In particular, the order on the permanent injunction contains no discussion of Father's testimony nor any mention of even a single incident in which Mother interfered with his parenting. As a result, we must conclude that the trial court's orders fail to contain the findings of fact necessary for appellate review and the orders should be vacated on this basis. *See id.* at 36 ("One remedy appellate courts typically apply when a trial court's factual findings fail to satisfy the Rule 52.01 requirement is to remand the case to the trial court with directions to issue sufficient findings and conclusions.").

We note, however, that Mother also takes issue with the notice she received prior to the entry of the temporary injunction and permanent injunction. We agree that the notice Mother received was suspect at best. As previously discussed, Mother accepted service on the petition for injunctive relief during the hearing; as such, even Father admits in his brief to this Court that this hearing was essentially "ex parte." *See Ex Parte*, *Black's Law Dictionary* 657 (9th ed. 2009) ("Done or made at the instance and for the benefit of one party only, and without notice to, or argument by, any person adversely interested[.]"). Still, the trial court vacated the temporary restraining order initially entered, the type of injunctive relief that can be awarded without notice, in favor of a temporary injunction, which requires notice to the adverse party. *See* Tenn. R. Civ. P. 65.04(1). Clearly, this was not authorized by Rule 65.

Moreover, the notice that Mother received of the hearing on the permanent injunction was lacking. During the November 8, 2017 hearing on what turned out to be a temporary injunction, the trial court specifically informed Mother that she would have the opportunity to contest Father's request for injunctive relief at a hearing on December 4, 2017. Inexplicably, however, the hearing was advanced to November 20, 2017, with the only notice Mother received an email from opposing counsel to the trial court's law clerk. The hearing therefore occurred only with four days' notice at most.

Following this hearing, the trial court entered a permanent injunction that both prohibited Mother from engaging in certain conduct, but also ordered Mother to participate in family counseling should the children's therapist recommend her participation. The trial court also ruled that Mother had an "affirmative" duty to facilitate the repair of Father's

- 20 -

relationship with the children. Thus, while the majority of the permanent injunction was merely prohibitory, the injunction did contain some mandatory provisions. *See Fisher v. Hargett*, 604 S.W.3d 381, 394–95 (Tenn. 2020) (quoting Lawrence A. Pivnick, 2 Tenn. Cir. Ct. Prac. § 31:2 (Dec. 2019 update) ("A mandatory injunction is one which alters the status quo and orders the defendant to take action to remedy the alleged wrong.")). Recently, the Tennessee Supreme Court reiterated the long-held principle that mandatory injunctions are extraordinary in nature and "has cautioned that this relief should be granted only in exceptional circumstances." *Id.* at 395 (citing *Cole v. Dych*, 535 S.W.2d 315, 322 (Tenn. 1976); *King v. Elrod*, 196 Tenn. 378, 268 S.W.2d 103, 106 (Tenn. 1954)). Given the extraordinary nature of the relief that Father was seeking, we are not persuaded that a mere three days' notice is sufficient time to prepare for such a hearing, particularly given Mother's pro se status and the fact that the hearing had previously been set for a different date.

Based on the foregoing, the trial court's decision to grant Father injunctive relief is, respectfully, riddled with errors. The temporary injunction was entered without Mother being provided proper notice, and she therefore had no meaningful opportunity to respond. And neither of the injunctions entered by the trial court contain the necessary findings of fact and conclusions of law. While Rule 65.07 offers the trial court some leeway in ordering injunctive relief in domestic relations cases, the errors in this case simply cannot be excused. In light of these errors, the fact that the most recent parenting plan has been vacated, and that child custody jurisdiction is currently vested with the juvenile court, we conclude that it is appropriate to vacate the trial court's grant of both the temporary and the permanent injunction, as well as the attorney's fees awarded therewith and to remand for further proceedings that comply with Rule 65, if and when the trial court reacquires jurisdiction over the parenting issues in this case.

Finally, Mother challenges the trial court's treatment of certain orders of protection. Mother did not specifically raise the orders of protection as issues in her brief. Moreover, the record reveals that Mother chose to voluntarily dismiss her requests for orders of protection. It therefore does not appear that Mother has demonstrated an error that this court is at liberty to correct. *Cf.* Tenn. R. App. P. 36(a) ("Nothing in this rule shall be construed as requiring relief be granted to a party responsible for an error or who failed to take whatever action was reasonably available to prevent or nullify the harmful effect of an error."), (b) ("A final judgment from which relief is available and otherwise appropriate shall not be set aside unless, considering the whole record, error involving a substantial right more probably than not affected the judgment or would result in prejudice to the judicial process.").

**E.**

Four issues raised in Mother's amended brief remain: (1) that the trial court erred in not requiring Father to prove "ability to pay" before ordering Mother to pay fees and

expenses; (2) that the trial court erred in not requiring the parties to attend mediation; (3) that the trial court erred in requiring Mother to pay certain medical bills; and (4) that the trial court erred in denying Mother's requests for relief from final judgment and in granting in part Father's Rule 69.07 motion. In her reply brief, Mother asserts that she is "no longer pursuing" or "discontinuing" these issues as they no longer serve as a means of providing Mother with meaningful relief. As such, we will not address these issues.[20]

## F.

Finally, Father asks for attorney's fees to be awarded under Tennessee Code Annotated section 27-1-122, which provides as follows:

> When it appears to any reviewing court that the appeal from any court of record is frivolous or taken solely for delay, the court may, either upon motion of a party or of its own motion, award just damages against the appellant, which may include, but need not be limited to, costs, interest on the judgment, and expenses incurred by the appellee as a result of the appeal.

This statute recognizes that parties should not be forced to bear the cost and vexation of baseless appeals. *Davis v. Gulf Ins. Group*, 546 S.W.2d 583, 586 (Tenn.1977). "An appeal is deemed frivolous if it is devoid of merit or if it has no reasonable chance of success." *Wakefield v. Longmire*, 54 S.W.3d 300, 304 (Tenn. Ct. App. 2001). "Determining whether to award these damages is a discretionary decision." *Young v. Barrow*, 130 S.W.3d 59, 66–67 (Tenn. Ct. App. 2003) (citing *Banks v. St. Francis Hosp.*, 697 S.W.2d 340, 343 (Tenn. 1985)).

We agree with Father that much of Mother's arguments on appeal were baseless. However, Mother has succeeded in showing that the trial court did err in some significant respects.[21] And she has been ordered to pay incredible amounts of fees during the pendency of this case. As such, we exercise our discretion to decline an award of fees under section 27-1-122 in this case.[22]

## V. CONCLUSION

The judgment of the Shelby County Chancery Court is vacated in part, reversed in

---

[20] We note that out of an abundance of caution, we have reviewed Mother's arguments on these issues. In general, her arguments as to these issues do not contain developed argument supported by relevant legal authority. So even if Mother had not abandoned these issues, they would have been waived.

[21] Father appeared to have had his own concerns with the sua sponte parenting plan, particularly as it pertains to the duties of the guardian ad litem. While Father has chosen not to pursue those arguments on appeal, the vacatur of the sua sponte parenting plan is beneficial to Father in that it cures Father's concerns about the guardian ad litem.

[22] Father cites no other statute that he asserts would entitle him to fees.

part, and affirmed in part. Costs of this appeal are taxed one-half to Appellant Karen Marchand Shaw, and one-half to Appellee Kevin Michael Shaw, for all of which execution may issue if necessary.


s/ J. Steven Stafford
J. STEVEN STAFFORD, JUDGE